(December 23, 1905.)

## GUMAER v. WHITE PINE LUMBER COMPANY.

[83 Pac. 771.]

CONTRACT TO PURCHASE REAL ESTATE—RIGHTS OF PARTIES TO SELL TIMBER UNDER CONTRACTS TO PURCHASE—SUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT—REQUEST TO INSTRUCT JURY WILL ONLY BE REVERSED WHEN.

1. Contracts to purchase real estate must be in writing and only convey such rights as are shown by the contract.

2. A party accepting a contract to purchase real estate that provides that no timber shall be cut or removed from the ground until the contract has been complied with in its entirety, has no power or right to sell the timber growing on the land, with permission to remove the same, until the contract is fully completed.

3. Where the evidence is sufficient to support the verdict or there is a material or substantial conflict in the evidence, the judgment will not be reversed.

4. Where it is shown that the trial court refused to give requests to charge the jury on certain issues, and the record does not show the instructions given by the court on its own motion, this court cannot determine whether there was error in such refusal, as it is presumed the court fully and fairly instructs on all the issues involved.

(Syllabus by the court.)

APPEAL from the District Court of Kootenai County. Honorable Ralph T. Morgan, Judge.

Judgment for the plaintiffs. From an order overruling a motion for a new trial, defendant appeals. Judgment affirmed.

The facts are stated in the opinion.

Charles L. Heitman, for Appellant.

The declaration or acts of a grantor, made or done after the delivery of his deed, are not admissible to disparage his deed, though admissible for the purpose of sustaining it. (*Ord v. Ord*, 99 Cal. 523, 34 Pac. 83; *Bury v. Young*, 98 Cal. 446, 35 Am. St. Rep. 186, 33 Pac. 338; *Emmons v. Barton*, 109 Cal. 670, 42 Pac. 303; Bigelow on Fraud, 171; *Arnegaard v. Arnegaard*, 7 N. Dak. 475, 75 N. W. 804, 41 L. R. A. 258.) The complaint in this action in express language is based upon a penal statute, to wit, section 4531 of the Revised Statutes of Idaho. The supreme court of Montana, in construing a similar statute, says: "It is needless to observe that the law is highly penal in its character. By way of punishment, it subjects the wrongdoer in certain cases to an extraordinary liability for the property of another appropriated to his own use." (*McDonald v. Montana Wood Co.*, 14 Mont. 88, 43 Am. St. Rep. 616, 35 Pac. 670; *Keyes v. Prescott*, 32 Vt. 86; *Hughes v. Stevens*, 36 Pa. St. 320.) Possession is title. It is not strong title, but is evidence of some interest, sufficient to put the opposite party on guard. (*Feirbaugh v. Masterson*, 1 Idaho, 135.) A purchaser of an estate who knows that it is in the possession of a person other than the vendor with whom he is dealing is thereby charged with a constructive notice of all the interest, right and equity which such possessor may have in the land. (2 Pomeroy's Equity Jurisprudence, 2d ed., sec. 614, and cases cited.)

Robertson, Miller & Rosenhaupt, W. L. Husbands, P. C. Shine and Edwin McBee, for Respondents.

This waiver of treble damages did not mislead defendant to its prejudice in its defense. It was entirely proper to permit this waiver; the allegations were in no way charged. (Rev. Stats. 1887, sec. 4225; *Aulback v. Dahler*, 4 Idaho, 654, 43 Pac. 322; *Hawkins v. Pocatello Water Co.*, 3 Idaho, 766, 35 Pac. 711; *People v. Slocum*, 1 Idaho, 62-74; *Kelly v. Clark*, 21 Mont. 291, 69 Am. St. Rep. 668, 42 L. R. A. 621, 53 Pac. 959.) Courts under the statute disregard defects of pleading

not affecting substantial rights.    (Rev. Stats. 1887, sec. 4231.)
The defense being based on a claim for growing trees and
rights of way extending for five years, claiming through a
verbal agreement and against a positive written prohibition
in the contract under which appellant claims, renders such
claim void as against the statute of frauds.    (*Thayer v. Rock,*
13 Wend. (N. Y.) 53; 1 Mechem on Sales, sec. 336.)    The
property was conveyed by the so-called bill of sale which was
neither signed by the Northern Pacific Railroad, the owner of
the land, or by Mrs. Gumaer, the purchaser thereof, and could
convey no title.    (Laws 1887, sec. 6007; *McGinness v. Stan-
field,* 6 Idaho, 372, 55 Pac. 1020; *People v. White,* 6 Cal. 75;
Comp. Code, sec. 2400, and cases there cited.)    The court will
presume, in the absence of the record in favor of the validity
of the judgment of the court below, that proper instructions
covering the point were given.    (*Hopkins v. Utah Northern
R. R. Co.,* 2 Idaho, 300, 13 Pac. 343; *State v. O'Donald,* 4
Idaho, 343, 39 Pac. 556; *Pennsylvania Co. v. Roy,* 102 U. S.
451, 26 L. ed. 141.    See Elliott's Appellate Procedure, par.
701.)

STOCKSLAGER, C. J.—This complaint alleges that the
defendants—respondents—are husband and wife; that de-
fendant—appellant—is a private corporation under authority
of the state of Washington; that plaintiffs are the owners
of certain lands in Kootenai county, which is community
property, and that they are in possession of such lands.    That
the defendant, at divers and sundry times within the past
twelve months, wrongfully, unlawfully and willfully, without
any title or authority so to do, entered upon said lands above
described, cut and removed therefrom and off of said lands
quantities of valuable timber then and there growing upon
said lands and belonging to and being the property of the
plaintiffs, with full knowledge of the ownership of said lands
and timber by plaintiffs, and full knowledge of the fact that
defendant had no right or title to said lands or timber or
any authority to enter upon said lands or cut or remove any
of said timber therefrom.    Then follows an estimate of the

kind, quantity and quality and value of such timber alleged
to have been cut and removed from said lands to the said mill
of appellant, and there sawed said timber into lumber and
converted the same to its own use.   Another allegation is that
defendant, at the same time and times of cutting and remov-
ing said timber from plaintiffs' lands, destroyed and con-
verted to its own use eighty rods of rail fencing on said lands
belonging to plaintiffs, which fencing was at the time of said
conversion and destruction of the value of $100.   Also at the
same time and times defendant took, destroyed and converted
to its own use two thousand seedling apple trees, the same then
and there being in a nursery on plaintiffs' land, the value of
which is alleged to be $500.   Plaintiffs pray for judgment
as follows: For the timber, $5,529.25; fence, $100; apple
trees, $500.   The answer admits that respondents are husband
and wife, and that the defendant is a private corporation as
alleged in the complaint.   All the other allegations are de-
nied.   As affirmative defense the defendant avers that at a
time long prior to the dates mentioned in plaintiffs' com-
plaint, and at a time prior to plaintiffs becoming possessed
of any right, title, claim or interest in or to said lands, to
wit, November 12, 1901, and for a long time prior thereto,
the North Idaho Land Company, Limited, a corporation, was
the sole and exclusive owner and holder of a contract for the
purchase of the premises described in plaintiffs' complaint,
including all timber growing or being upon said premises
from the Northern Pacific Railway Company, a corporation,
being then the owner in fee of the whole of said premises,
and the said North Idaho Land Company, Limited, was upon
said date and for a long time prior thereto had been in full,
complete and absolute possession of said premises.   That on
said date, November 12, 1901, said North Idaho Land Com-
pany, Limited, for a valuable consideration, sold, assigned,
transferred and delivered, by good and sufficient bill of sale
to the White Pine Lumber Company, a corporation, all its
right, title, claim and interest in and to all the growing, stand-
ing or down timber upon said lands suitable for sawing pur-
poses, down to the size of ten inches in diameter, sixteen

feet from the ground, together with the privilege and right
to go upon and across said premises for the purpose of cutting
and removing said timber therefrom, which bill of sale is
annexed to this answer, marked exhibit "A," and made a
part, etc., and the said defendant then and there entered into
the possession and occupancy of said lands for the purpose
of cutting and removing said timber therefrom, and there-
after continued in the sole and exclusive possession and oc-
cupancy of said lands at all times prior to the first day of
September, 1903, and defendant alleges that said Howard B.
Gumaer was on the twelfth day of November, 1901, and for a
long time prior thereto had been, and is now, an officer, to
wit, a trustee of the North Idaho Land Company, Limited,
and that the said sale and delivery of said timber to defendant
as hereinbefore alleged was made with the full knowledge and
consent, and the acquiescence and approval of the said
Gumaer and his wife, and defendant alleges that whatever
right, title or interest said plaintiffs, or either of them, have
or claim to have in said premises was acquired with full
knowledge and information concerning this defendant's right,
title and interest in and to the timber growing and being
thereon; and defendant alleges that said plaintiffs and each
of them have repeatedly, both before and after they began
to claim and assert that they had acquired some right, title,
claim or interest in or to said premises, or some portion or
part thereof, recognized and confessed to this defendant by
word and action that this defendant was the owner and en-
titled to cut and remove all timber from said lands measuring
in diameter over and above ten inches at a distance of sixteen
feet from the ground; and defendant alleges that said North
Idaho Land Company, Limited, continued during all the time
hereinbefore mentioned from the fifteenth day of December,
1902, to be the sole and exclusive owner and holder of said
contract for the purchase of said lands and the whole thereof
from the Northern Pacific Railway Company, save and except
the timber standing, growing and being on said lands above
ten inches in diameter, sixteen feet from the ground thereto-
fore sold and assigned to the White Pine Lumber Company

as above alleged, on the twelfth day of November, 1901; and defendant alleges that on the fifteenth day of December, 1902, said North Idaho Land Company sold, assigned, transferred and delivered the said contract for the purchase of said lands and the whole thereof to Lucy J. Gumaer, save and except, however, the timber standing, growing and being thereon theretofore sold and assigned to the White Pine Lumber Company as above alleged; and defendant alleges that said plaintiff, Lucy J. Gumaer, purchased, took and received said contract for the purchase of said lands with full and complete notice and knowledge of the fact that the said North Idaho Land Company, Limited, a corporation, had theretofore, by good and sufficient bill of sale and transfer of possession, for a valuable consideration, sold and assigned to the White Pine Lumber Company all the right, claim and interest in and to the timber standing, growing and being on said lands of the size above ten inches, and could not therefore transfer or assign any interest in or to said described timber or any portion thereof to said plaintiff, Lucy J. Gumaer, and defendant alleges that whatever right, title, claim or interest in and to said lands or any portion thereof which plaintiffs or either of them may have or claim to have, is derived through the above-described contract for the purchase of said lands, and was acquired with full knowledge, notice and recognition of the defendant's claim, interest in, and title to the timber growing thereon. That whatever right, title, claim or interest in or to said premises or any portion or part thereof, which said parties or either of them may have, is secondary, subservient, inferior and subject to defendant's right and title to said described timber growing and being upon said lands.

The bill of sale attached to and made a part of the affirmative answer as exhibit "A" is in the usual form and purport to convey "all of the growing, standing and down timber suitable for sawing or milling purposes, down to a size of ten inches in diameter, sixteen feet from the ground; all other timber to be left and remain on the lands." The consideration named is $350. On these issues the case was tried with a jury, and a verdict for one thousand dollars damages

was returned in favor of the plaintiffs, and judgment ordered entered in compliance with the verdict.  A motion for a new trial was filed, statement settled, and motion overruled.  The appeal is from the order overruling the motion for a new trial.

The record contains eleven assignments of error occurring at the trial, and specifies six reasons why the evidence is insufficient to justify the verdict.  The first six assignments of alleged error occurring at the trial relate to the admission and rejection of evidence, and may be disposed of later if considered necessary to a final disposition of the case in this court.  The seventh assignment is based on the refusal of the court to sustain a motion for nonsuit.  It is shown by the record that on the trial before any evidence was taken, plaintiffs waived claim for treble damages, and there does not appear to have been any objection to such waiver on behalf of appellant.  The motion for nonsuit is as follows: "Now comes the defendant in the above-entitled cause, and moves the court for a nonsuit for the following reasons, to wit: 1. That the complaint of the plaintiffs herein is based upon section 4531 of the .Revised Statutes of Idaho, which is a penal statute, and this action being brought upon said statute, a purely statutory remedy is sought to be enforced; 2. That plaintiffs in open court have expressly waived their right to rely upon this statutory remedy, and by waiving that remedy their complaint does not state a cause of action, and there is no longer any issue of law or fact to be determined by the court or jury."  The section of the statute above referred to is as follows: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles, or otherwise injures any trees or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated ground; or on the common or public grounds of or in any city or town; or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any court having jurisdiction."

Counsel for appellant insists that this motion should have been sustained. He calls attention to *McDonald et al. v. Montana Wood Co.*, 14 Mont. 88, 43 Am. St. Rep. 616, 35 Pac. 668, in support of his contention; but we do not think this decision is comforting to appellant. The jury returned a verdict for plaintiffs for $549.63, which being trebled, amounted to $1,648.49, for which amount judgment was entered. Appeal was prosecuted in the supreme court and there it was held that: ''The evidence in the case does not support the contention that there was any willfulness, wantonness or maliciousness in the acts or conduct of the defendant. We therefore think that the evidence did not justify the rendering of judgment for treble damages against defendant in this case. It is ordered that the judgment of the court below be modified by rendering judgment in favor of plaintiff and against defendant for the amount of actual damages found by the jury, and in other respects the judgment is affirmed as modified.'' In the case at bar, the question of treble damages is not before us for modification of the judgment, that question having been disposed of by waiver of any claim for treble damages by plaintiffs before any evidence was introduced.

Counsel for appellant in his brief states: ''The complaint being in express language, based upon a penal statute, the fact that plaintiffs at the opening of the trial waived treble damages would not entitle them to judgment without amending their complaint.'' We cannot give our assent to this contention. The complaint informed the defendant of the demand for actual damages, then asked that the amount so found should be trebled under the statutes. Before the trial this latter demand was waived. How could this waiver result in injury or in any way prejudice the rights of or mislead the defendant in the trial of the action? The complaint had been accepted as sufficient by the defendant as no demurrer seems to have been filed. It met the issue presented by the plaintiffs in their complaint by denying title in plaintiffs prejudicial to the defendant's right to cut and remove the timber of a certain size from the land in con-

troversy under and by virtue of the bill of sale which is made a part of their affirmative answer. This being true—and it is shown by the record—the only effect of the waiver was likely to benefit defendant. The same issues were to meet whether the judgment should be for actual damages or whether it was to be trebled under the statute. (See Rev. Stats., secs. 4225, 4231; *Kelly v. Clark*, 21 Mont. 291, 69 Am. St. Rep. 668, 42 L. R. A. 621, 53 Pac. 959.) In *Hawkins v. Pocatello Water Co.*, 3 Idaho, 766, 35 Pac. 711, section 4231 above referred to is construed. Again, if counsel for appellant believed that the waiver of treble damages would in any way affect his rights or prejudice him in his trial of the issue involved, it was his duty to notify the court then and there of that fact and ask for relief. (*Aulbach v. Dahler*, 4 Idaho, 654, 43 Pac. 322.) The motion for nonsuit was properly denied.

The next question we will consider is the rights of appellant, if any, under the bill of sale from the North Idaho Land Company Limited. It will be remembered that the Northern Pacific Railway Company was the owner in fee of the land in dispute, and on the thirteenth day of May, 1897, contracted to sell the same with certain restrictions and conditions, to one John Lockhart. Thereafter, and on the first day of December, 1899, said Lockhart, by and with the approvel of Thomas Cooper, who signs himself Western Land Agent, evidently of the Northern Pacific Railway Company, for a consideration of $60.10, assigned all of his right, title, interest and claim in and to the North Idaho Land Company, Limited. This assignment is acknowledged on the eleventh day of February, 1902. The North Idaho Land Company, Limited, for a consideration of $300, assigned its contract of purchase of the land in dispute to Lucy J. Gumaer with all its rights, title, interest and claim, to said land. This assignment is acknowledged. Afterward, and on the fifteenth day of December, 1902, an assignment from the same party to Mrs. Gumaer, same consideration and conditions, was acknowledged and is a part of the record before us.

This brings us to the bill of sale, Defendant's Exhibit "2." It is in the usual form and purports to convey all the right, title, interest and claim of the North Idaho Land Company, Limited, in and to all the growing, standing or down timber suitable for sawing or milling purposes down to the size of ten inches in diameter, sixteen feet from the ground, all other timber of smaller size to be left standing and remain on the land. It further provides that: "All of said timber is to be cut and removed within a reasonable time and on or before five years from date." Gives right to enter on said lands and remove said timber at all times, and privilege to cut and build roads on the land. This bill of sale is signed as follows: "North Idaho Land Company, by M. S. Lindsay, Manager. Signed, sealed and delivered in presence of A. V. Bradrick. Attest: E. A. Lindsay, Secretary." M. S. Lindsay signs the instrument as manager, and then as notary public for Kootenai county, takes the acknowledgment of E. A. Lindsay as secretary of the company, who signs the instrument as above indicated. The original contract between the Northern Pacific Railway Company and John Lockhart, contains, among numerous others, the following provision: "The party of the second part will not cut and remove or allow to be cut and removed any timber from the said lands without permission from the Western Land Agent of the party of the first part until the land shall have been paid for in full." It does not appear from the record that anyone ever had the permission from the Northern Pacific Railway Company to cut or remove any timber from this land. All assignments are based on the original contract of Lockhart to purchase the land from the Northern Pacific Railway Company. By the terms of this contract Mr. Lockhart was not permitted to cut the timber until the entire purchase price was paid. This being true, we are at a loss to understand how he could, by assignment, bill of sale, quit-claim deed or any other conveyance known to the law, convey a right which his contract did not give or grant to him; that is, to give a conveyance that would permit the timber to be cut and removed before the contract was completed.

It is urged by counsel for respondents that the timber growing upon the land in dispute was a part of the realty, and hence could not be conveyed by bill of sale. This is perhaps true, but unimportant to a determination of the issue involved. It is not claimed that appellant had purchased the timber from the Gumaers or either of them, only that they had notice of such purchase from the North Idaho Land Company, by appellant, of timber of certain dimensions growing or being on the land, including down timber, within certain dimensions. It is shown that final payment was made by Lucy J. Gumaer, and that the deed from the railway company was delivered to her under the terms of the contract, by which appellant claims the right to cut and remove the timber it is expressly prohibited; and whilst the railway company through its western agent, Mr. Cooper, approves the assignment by Lockhart to the North Idaho Land Company, of all its right, title, interest and claim to the land, it is not shown, neither is it claimed that his sanction or approval of the assignment carried with it the right to cut the timber. In our view of the case no one ever had the right to cut or remove any of the timber growing on this land (unless it be for domestic use, and then only by the occupant), until the final payment was made and this it is conceded to have been made by Mrs. Gumaer. If this is true, no one prior to that time had the right to either cut or in any manner dispose of such timber, and the bill of sale from the North Idaho Land Company to appellant or any other conveyance purporting to convey the right to cut the timber before final payment was made as provided for in the contract was a nullity.

It is urged that the verdict of the jury is excessive. The plaintiffs ask for damages in excess of $5,000, and the jury returned a verdict for $1,000—less than one-fifth of the demand. We have no way of ascertaining how the jury reached its conclusion. It is sufficient to say that evidence was introduced amply supporting the verdict, and, as has been so frequently said by this court, where there is evidence to support the verdict or there is a substantial conflict, the

verdict of the jury will not be disturbed. We can see no reason to modify or change the rule now.

Other assignments are urged by counsel for appellant as to the admission and rejection of evidence and the giving and refusal to give certain instructions. We are not furnished with all the instructions given by the court, and hence cannot determine whether appellant's requests should have been given or not. It is presumed that the court fully and fairly instructed the jury on all the issues involved, and unless the record shows the instructions as given by the court, we cannot know whether error was committed or not. If the court gave the instructions covering all the issues, but in different language, it was not error to refuse these requests. In so far as the assignments of error are based upon the refusal of the court to permit certain questions to be answered, in our view of the case they were properly rejected, as the only question to be determined was: What, if any, was the damage sustained by the plaintiffs in cutting and removing the timber and breaking down the fence and permitting the destruction of the apple trees? These questions were all fairly before the jury and they determined the questions by their verdict, and we think it is sustained by the evidence. The judgment is affirmed, with costs to respondents.

Ailshie, J., and Sullivan, J., concur.