(March 29, 1916.)

## J. W. NEWMAN, Respondent, v. GREAT SHOSHONE AND TWIN FALLS WATER POWER COMPANY, a Corporation, Appellant.

[156 Pac. 111.]

SUFFICIENCY OF EVIDENCE—NONSUIT—VARIANCE—MISCONDUCT OF JURY —CHANCE VERDICT.

1. In a civil case it is not necessary that the facts upon which the verdict is based be established beyond a reasonable doubt. It is the duty of the jury to decide according to the preponderance of the evidence and the reasonable probability of truth.

2. *Held,* that in this case there was substantial evidence tending to show that respondent's loss was due to appellant's negligence; that its weight and sufficiency were questions for the jury, and that the motions for nonsuit were properly denied.

3. No variance between the allegations in a pleading and the proof will be deemed to be material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.

4. Where it appears that the jurors did not agree in advance to be bound, and did not consider themselves bound to render a verdict to be found by adding the amounts each thought respondent should recover and dividing the sum so found by the number of jurors, but resorted to that plan for the purpose of forming a basis of discussion, such action was not misconduct on the part of the jury, nor does it constitute a ground to set the verdict aside.

[As to misconduct of jury in respect of method of arriving at verdict, see note in 134 Am. St. 1061.]

APPEAL from the District Court of the Fourth Judicial District, · for Lincoln County. Hon. Chas. O. Stockslager, Judge.

Action for damages.   Judgment for plaintiff.   *Affirmed.*

S. H. Hays and P. B. Carter, for Appellant.

The theory of the complaint is that the sides of the barn became charged with electricity; that the electricity passed into the barn setting it on fire.   In the proof, the theory is that the fire started on the outside by reason of a spark or arc.   This variance between the allegations and the proof misled the appellant to its prejudice in maintaining its defense upon the merits.   The variance was a material one and the trial court should have sustained appellant's motion for nonsuit.   (Sec. 4245, Rev. Codes; *Lewis v. Utah Construction Co.*, 10 Ida. 214, 77 Pac. 336; *Davidson Grocery Co. v. Johnston*, 24 Ida. 336, Ann. Cas. 1915C, 1129, 133 Pac. 929; Pomeroy, Code Remedies, p. 616; *Dolbee v. Detroit etc. Ry. Co.*, 144 Mich. 656, 108 N. W. 99; *Birmingham Ry. & Electric Co. v. Brannon*, 132 Ala. 431, 31 So. 523; *Chitty v. St. Louis etc. Ry. Co.*, 148 Mo. 64, 49 S. W. 868; *Pierce v. Great Falls & C. Ry. Co.*, 22 Mont. 445, 56 Pac. 867.)

The verdict in this action was arrived at by the jury impaneled in this case by a resort to the determination of chance, having agreed in advance that the quotient verdict obtained by the addition of the several amounts to which each juror thinks the party entitled and by dividing the same by the number of jurors voting should be the verdict for which judgment was rendered.   (*Flood v. McClure*, 3 Ida. 587, 32 Pac. 254.)

"Courts should at all times discountenance and disapprove the resorting to any such insidious means of reaching a verdict.   It is demoralizing in its tendencies and is calculated to bring the administration of justice into disrepute." (*Great Northern Ry. Co. v. Benjamin* (Mont.), 149 Pac. 968; *McDonald v. Great Northern Ry. Co.*, 5 Ida. 8, 12, 46 Pac. 766.)

Oppenheim & Hodgin and J. M. Parrish, for Respondent.

A quotient or average verdict will be upheld, if the jurors do not antecedently agree to be bound by the result of the

computation, but reserve to themselves the right to dissent from it in arriving at their verdict, or if they do so agree, they subsequently discuss the question, and the court can see the verdict is really the result of deliberation and discussion. (*Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Beakley v. Optimist Printing Co.,* 28 Ida. 67, 152 Pac. 212; 1 Hayne, New Trial & Appeal, sec. 71; 38 Cyc. 1845; Thompson, Trials, sec. 2602; *Lee v. Clute,* 10 Nev. 149; *Florence etc. R. Co. v. Kerr* (Colo.), 151 Pac. 439; *Greeley Irr. Co. v. Von Trotha,* 48 Colo. 12, 108 Pac. 985, 989; *Colorado Springs v. Duff,* 15 Colo. App. 437, 62 Pac. 959; *Empson Packing Co. v. Vaughn,* 27 Colo. 66, 59 Pac. 749, 752; *Wiles v. Northern Pac. Ry. Co.,* 66 Wash. 337, 119 Pac. 810.)

The general allegations in the complaint with respect to negligence were ample, and clearly bring the case within the rule announced by this court in *Younie v. Blackfoot Light & Water Co.,* 15 Ida. 56, 96 Pac. 192; *Gagnon v. St. Maries Light & Power Co.,* 26 Ida. 87, 141 Pac. 88.

MORGAN, J.—This action was commenced by respondent in order to recover from appellant the sum of $1,586, in which amount, he alleged in his complaint, he was damaged by reason of the destruction of his barn and its contents, by fire, on the night of April 11, 1913, due to appellant's carelessness and negligence. It appears that the barn in question was situated in the village of Shoshone; that it was 24 feet square and 14 feet high to the eaves; that it was constructed of 2x4 timbers covered with corrugated iron sheets, or plates, and that appellant was, at the time of its destruction, engaged in the business of furnishing electricity for light and power purposes in the village of Shoshone. It is the contention of respondent, and there is substantial evidence to support it, that appellant's predecessor in interest, without his knowledge or consent, attached two electric light wires to his barn and strung them lengthwise along the east side of it and so attached them, by short brackets placed 24 feet apart and at the corners of the building; that the wires were supported but a few inches from the side and about 15 inches below the

eaves of the barn; that they were loosely strung, or that through appellant's carelessness and negligence they became loose, and were maintained in such a manner that they sagged down about ten inches in the middle and to such an extent that when the wind was blowing they would strike against the side of the barn and that they rubbed and chafed against the corrugated iron until the paint was worn from the sheets, or plates, at the point of contact and the insulation upon the wires became frayed and worn away.

It appears that on the night of April 11, 1913, the wind was blowing from the east, and respondent's theory, upon which the case was presented to the trial court and jury, was that it caused the wires, which were charged with a current of electricity, to sway and rub against the sides of the barn thereby creating a short circuit and producing an arc, or flame, which ignited hay protruding through the cracks between the corrugated iron sheets, or plates, and that the fire communicated itself to and destroyed the barn and its contents.

At the conclusion of the introduction of evidence in chief, on the part of respondent, appellant moved for a nonsuit upon the ground of insufficiency of evidence to support a verdict, and at the close of the testimony upon the part of both parties this motion was renewed, and the additional ground was assigned that there was a variance between the allegations of the complaint and the proof offered by respondent. These motions were overruled and the trial resulted in a verdict and judgment in the sum of $1,079.80 in favor of respondent, from which judgment, and from an order denying a motion for a new trial, this appeal was taken.

Appellant's assignment of errors presents three questions for our consideration: 1. The sufficiency of the evidence to sustain the verdict and judgment; 2. Variance between the allegations of the complaint and the proof adduced by respondent; 3. The conduct of the jury in arriving at its verdict.

The evidence of the origin of the fire was entirely circumstantial. In addition to the facts heretofore set out it was shown that when it was discovered it was burning at a point near where the wires came in contact with the barn. Expert

testimony was produced by respondent tending to show that the amount of electricity carried by the wires would, under the circumstances shown to have existed at the time and place in question produce a sufficient arc, or flame, to ignite hay. Other expert testimony was introduced on behalf of appellant tending to show that it would not do so. Apparatus was set up in the courtroom and experiments were made by both parties, in the presence of the jury, but the results of these experiments are not disclosed in the record.

As above indicated, there was no direct evidence that the fire was caused by appellant's wires coming in contact with respondent's barn, but there was ample to show a reasonable probability that it occurred in that way.

"There is no doctrine of the law settled more firmly than the rule which authorizes issues of fact in civil cases to be determined in accordance with the preponderance or weight of the evidence. The reason of the rule no doubt is, that as between man and man, where a loss must fall upon one or the other, it is right that the law should cast it upon him who is shown to have been the cause of the loss, by proof establishing the reasonable probability of the fact. Proof beyond a doubt is not necessary in such an action." (10 R. C. L. 1012, sec. 204.)

It is said in Greenleaf on Evidence, 15th ed., sec. 13a: "It is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth." (See, also, *Indianapolis etc. R. R. Co. v. Collingwood*, 71 Ind. 476; *Indianapolis etc. R. R. Co. v. Thomas*, 84 Ind. 194; *Lillstrom v. Northern Pac. Ry. Co.*, 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; *Chicago B. & Q. R. Co. v. Hildebrand*, 42 Neb. 33, 60 N. W. 335; *Louisville etc. Ry. Co. v. Thompson*, 107 Ind. 442, 57 Am. Rep. 120, 8 N. E. 18, 9 N. E. 357; *Missouri O. & G. Ry. Co. v. Smith* (Okl.), 155 Pac. 233.)

In case of *Adams v. Bunker Hill etc. Mining Co.* (on rehearing), 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844, this court said: "There are very few things in human affairs, and

especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility,* or even some *probability,* that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such *possibility,* or even *probability,* is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.''

There was substantial evidence tending to show that respondent's loss was due to appellant's negligence, its weight and sufficiency were questions for the jury and the motions for nonsuit were properly denied. (*Culver v. Kehl,* 21 Ida. 595, 123 Pac. 301, and cases therein cited; *South Idaho etc. Adventists v. Hartford F. Ins. Co.,* 26 Ida. 712, 145 Pac. 502; *Graham v. Coeur d'Alene etc. Co., Ltd.,* 27 Ida. 454, 149 Pac. 509.)

The contention that there was a variance between respondent's pleading and proof is based upon the allegation in the complaint that ''defendant did on the 11th day of April, 1913, and without fault of the plaintiff, negligently and carelessly permit a current of electricity to pass through the side of plaintiff's said barn, said current thereby coming in contact with said barn and the contents thereof, and did thereby, set fire to the said barn and the contents thereof. . . . . '' Appellant insists that the proof adduced on behalf of respondent does not support this allegation and that no evidence was offered tending to show that a current of electricity passed through the side of the barn, thereby setting fire to it and destroying it and its contents.

Appellant's theory of the case, as disclosed by the cross-examination of respondent's witnesses and the direct examination of its own, was that the wires did not come in contact with the building and that, had they done so, they would not have produced a sufficient arc, or flame, under the facts and circumstances relied upon by respondent, to ignite the hay. No objection was made to the introduction of respondent's

evidence upon the ground that it did not tend to sustain the allegations of his complaint, nor was a variance mentioned until appellant renewed its motion for a nonsuit at the close of taking testimony by both parties. It appears to us that the evidence supports the allegations of the complaint and that no variance existed, but it is unnecessary to decide that question in this case for, if a variance did exist, it is clear that appellant was not misled to its prejudice thereby and this contention is disposed of by sec. 4225, Rev. Codes, which provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. . . . . "

One of the grounds upon which the motion for a new trial was based was that the jury, in arriving at its verdict, resorted to chance. In support of this contention appellant filed in the district court the affidavits of eight of the jurors, the language of each being identical with that of the others, as follows:

"State of Idaho,
County of Lincoln,—ss.

"J. M. Mannon being duly sworn according to law deposes and says:

"That he is one of the jurors empaneled in the above entitled case that came on for trial April 20th, 1914, in Shoshone, Lincoln County, Idaho, and that a verdict was reached in said cause April 22nd, 1914, and under the instructions of the Hon. C. O. Stockslager, the verdict was sealed: That on the morning of April 23rd, 1914, the verdict was rendered to the court, said verdict being for the plaintiff in the sum of $1,079.80.

"That the jury in said cause arrived at said verdict by agreeing that each member thereof should mark the sum which he thinks the plaintiff is entitled to recover on a slip of paper and then ascertain by addition the amount of the sums so marked, and then to divide said amount by twelve, the number of jurors, and that the quotient resulting from such division shall be the amount of the verdict.

"Deponent further says that the verdict in this cause was arrived at in this manner and was the verdict rendered in this action."

In opposition to the motion and in further explanation of the action of the jury the respondent filed the affidavits of the same jurors, the language of each being identical with that of the others, as follows:

"State of Idaho,

County of Lincoln,—ss.

"J. M. Mannon, being duly sworn according to law deposes and says:

"That on the 29th day of April, 1914, the affiant herein made the following affidavit at the instance of the defendant: [Here appears an exact copy of the affiant's affidavit above quoted.]

"That to amplify and in furtherance of setting forth what actually took place in the jury room in considering the verdict arrived at in said cause, this affiant further states that immediately upon adjourning to the jury room, the jury proceeded to elect a foreman;

"Whereupon Charles J. Lisle was unanimously elected foreman of the jury; that thereupon the instructions of the Court were read and by the jury considered;

"Thereupon the jury took a vote on the proposition of whether or not the plaintiff should recover against the defendant, which vote was eleven (11) in favor of plaintiff and one (1) for the defendant;

"Whereupon the jury took another vote to ascertain whether or not the plaintiff should recover against the defendant, the result of which was eleven (11) for the plaintiff and one (1) for the defendant;

"Whereupon the foreman announced that the vote for the defendant was written by him and was in his own hand writing and that the same was erroneous;

"Whereupon the foreman announced: 'We shall therefore make the vote for the plaintiff unanimous.'

"Whereupon the jury took up the discussion of the amount of damage that plaintiff was entitled to. Thereafter sev-

eral votes were taken as to the amount of damage that the plaintiff should recover against the defendant, the sums ranging from about $800.00, the minimum, to $1575.00, the maximum, during which time a discussion was had concerning the evidence as to whether or not the tents in question were worth $10.00 a piece, as to whether or not the hose in question was worth 10¢ per foot; as to whether or not the pack outfits in question were worth $13.00 apiece, as to whether or not the saddles in question were worth $25.00 apiece, and in general the value as claimed by the plaintiff was thoroughly discussed;

"Whereupon it was suggested that an average might be struck and in this way, the jury might arrive at the true value of the damage under the evidence and instructions of the Court, an average was thereupon taken which resulted in the sum of $1,079.80 and that there was no agreement between the jury prior to said average being taken, that the jury would be bound by the average arrived at, on the contrary the average was taken simply for the purpose of assisting the jury in deciding what the true measure of damages was that plaintiff had sustained;

"Whereupon a further discussion of values was had by the jury in consideration of the evidence and instructions of the Court and after said discussion and after further considering the instructions of the Court, it was announced, 'Shall we or shall we not take a vote upon the measure of damage and fix the same at $1,079.80.'

"Whereupon the jury after further discussing and considering the evidence and instructions of the Court, announced that we will now take a vote upon the measure of damages to ascertain whether or not the actual damage of the plaintiff is the sum of $1,079.80, and thereupon after considering the various items of personal property and the barn in question, that the plaintiff had lost by reason of said fire, a vote was taken and nine or ten of the jurymen voted that the actual damage to the plaintiff, by reason of the loss of said property by said fire, was the sum of $1,079.80;

"Whereupon the verdict was filled out by the foreman by inserting the sum of $1,079.80 and a request was then and

there made by said foreman for said jury to sign said verdict, and that nine of said jurymen signed said verdict and three said jurymen refused to sign the same;

"That the affiant herein verily believes that the plaintiff's damage sustained by reason of said fire, is, and was the sum of $1,079.80 and that said belief is now, and was on the date and at the time said verdict was rendered, based upon all of the evidence as introduced in the above entitled cause, including the testimony of the witnesses detailed from the witness stand and the law as given by the Court and upon that, and that alone."

In addition to such showing respondent filed the affidavit of E. L. Clinger, another juror, in which he detailed the proceedings had in the jury-room in language similar to that above employed in that portion of the affidavit of Juror Mannon immediately following the copy of the one first made by him.

This court held in case of *Flood v. McClure,* 3 Ida. 587, 32 Pac. 254, that where a jury arrived at its verdict by agreeing that each juror should mark on a slip of paper the amount which he considered the plaintiff entitled to recover, and thereafter the several sums so marked should be added together and the amount thereof divided by twelve, the number of jurors, and that the quotient arising from such division should be the verdict, and that it was arrived at in that way and no other, such a method comes within the prohibition of subd. 2 of sec. 4439, Rev. Codes, providing that a verdict may be vacated and a new trial granted for misconduct of the jury. It was also held in case of *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545, where facts similar to those relied upon by appellant in this case were disclosed in the affidavits of certain of the jurors, some of whom thereafter made explanatory affidavits setting up facts similar to those relied upon by respondent here that, in view of the explanation so made, the verdict could not well be regarded as having been arrived at by chance.

The supreme court of Oklahoma, in case of *St. Louis & San Francisco Ry. Co. v. Brown* (Okl.), 144 Pac. 1075,

wherein a verdict had been rendered under circumstances like those disclosed by the record in this case, cited a great number of authorities supporting its decision upholding the action of the jury, and quoted from 29 Cyc. 812, as follows: "A verdict will not be set aside merely because the amount thereof was the result of a compromise between jurors, nor because the amount was first found by adding together the amounts the several jurors thought should be given and dividing the sum by 12, if there was no agreement in advance to return a verdict for the quotient so found."

In this case it appears to us that a fair construction of all the affidavits filed leads to the conclusion that no agreement was reached by the jurors in advance that they would be bound by the result of adding the amounts each thought respondent should recover and dividing the sum so found by the number of jurors. It rather appears that this plan was resorted to for the purpose of forming a basis for discussion and that the members of the jury did not agree to be bound, nor did they consider themselves bound, by it. Such action was not misconduct on the part of the jury, nor does it constitute a ground to set the verdict aside.

We find no error in the record, and the judgment of the trial court is affirmed. Costs are awarded to respondent.

Sullivan, C. J., and Budge, J., concur.