AMERICAN WATERWORKS & ELECTRIC CO. et al. v. TOWLE et al. (BOISE TITLE & TRUST CO. et al., Interveners).

(Circuit Court of Appeals, Ninth Circuit. October 15, 1917.)

No. 2902.

CORPORATIONS ⊗═566(2, 3)—RECEIVERSHIP—PRIORITIES OF CLAIMS.

Const. Idaho, art. 11, § 15, provides that the Legislature shall not pass any law permitting the leasing or re-leasing or alienation of any franchise so as to release or relieve the franchise or property held thereunder from any of the liabilities contracted or incurred in the operation, use, or enjoyment of the franchise or its privileges. Rev. Codes Idaho, § 2769, as amended by Sess. Laws Idaho 1909, p. 163, authorizes corporations to purchase and hold property and to sell, lease, or transfer any rights, privileges, franchises, or other property, etc. A light and water company sold its property to a power company, part of the price to be paid in installments out of the income from operating the system and delivered a deed in escrow. Thereafter a barn was burned as a result of the negligent construction, maintenance, and operation of a line of the light and water com-

pany, and the owner of the barn recovered a judgment against the power company. *Held*, that on a receivership of the power company, the judgment was a preferred claim against the proceeds of the sale of the light and water company's system over the claims of bondholders under a mortgage executed by the power company and covering after-acquired property and over the claims of other creditors of the power company.

Appeal from District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by Guy I. Towle against the Great Shoshone & Twin Falls Water Power Company in which a number of other parties intervened and in which a receiver for the defendant power company was appointed. From an order (232 Fed. 733) allowing the petition of the Boise Title & Trust Company for allowance of a preferred claim, the American Waterworks & Electric Company and another appeal. Affirmed.

Wyman & Wyman, of Boise, Idaho (Frank T. Wyman, of Boise, Idaho, and Graham Sumner, of New York City, of counsel), for appellants.

S. H. Hays, of Boise, Idaho, for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Appeal by the American Waterworks & Electric Company, as a creditor, and William Wallace, as receiver of the Great Shoshone & Twin Falls Water & Power Company, called the Great Shoshone Power Company, from an order of the District Court directing the receiver to pay a judgment for $1,228.55, recovered by J. W. Newman against the Great Shoshone Power Company from the proceeds of the sale of a water system in the town of Shoshone, Idaho. The order of the District Court was made pursuant to a petition presented by the Boise Title & Trust Company, which had given bond to secure the judgment in Newman's favor pending appeal.

Prior to July 1, 1912, the Great Shoshone Power Company, of Delaware, owned and operated electric power plants in Idaho, and the Shoshone Light & Water Company, of Idaho, owned and operated a power plant and waterworks in Shoshone, Idaho. On that day, July 1, 1912, the Shoshone Light & Water Company contracted with and transferred to the Great Shoshone Power Company possession of all its power plants, real estate, and other property in consideration of $55,000, $15,000 to be paid in cash, the balance payable from gross earnings of the plants in monthly payments until the balance should be fully paid. On February 12, 1913, the Shoshone Light & Water Company delivered to a bank of Shoshone a deed in favor of the Great Shoshone Power Company, to be held under escrow agreement, dated February 6, 1913. The Great Shoshone Power Company operated the property of the Light & Water Company until November 2, 1914, when, because of insolvency, a receiver was appointed for all the property of the Great Shoshone Power Company. In April, 1913, a barn, owned by one Newman at Shoshone, was burned. Newman

brought suit in the state court against the Great Shoshone Power Company, charging negligence in respect to construction and operation of electric wires, and on April 24, 1914, recovered judgment for $1,079.80, and threatened to issue execution. The Boise Title & Trust Company gave a bond to secure the judgment and stay execution pending an appeal to the Supreme Court of Idaho, and appeal was actually pending in April, 1913, at the time of the appointment of the receiver of the Great Shoshone Power Company. Thereafter, in March, 1916, the Supreme Court of Idaho affirmed the judgment in favor of Newman. 28 Idaho, 764, 156 Pac. 111. This occurred after the power company had paid a considerable sum in excess of the amount of Newman's judgment on account of the purchase price of the property covered by the contract of July 1, 1912. Afterwards the receiver completed the purchase of the property, and from the income paid more than $7,000. In 1910 and 1911, the Great Shoshone Power Company made mortgages to the Equitable Trust Company as trustee, covering all its properties, to secure bonds, and in April, 1915, foreclosure was had by the Equitable Trust Company of New York as trustee.

The District Court held that the judgment in favor of Newman was entitled to a preference in the distribution of the proceeds of the sale of the Shoshone water system, over and above the mortgage bondholders and other creditors of the Great Shoshone Power Company. It was the opinion of the court that the claim for preference should be sustained upon this ground: That section 2769 of the Revised Codes of Idaho, as amended in 1909 (Session Laws 1909, p. 163), which purports to confer upon corporations the power to "purchase and hold personal estate as the purposes of the corporation may require; * * * and to sell, lease, * * * transfer, mortgage, or convey, any rights, privileges, franchises" or other property "other than its franchises of being a corporation; and to purchase, own, vote or hypothecate the stock and bonds of other corporations"—should be read with relation to the limitations of section 15 of article 11 of the Constitution of the state of Idaho, which provides that the "Legislature shall not pass any law permitting the leasing or alienation of any franchise so as to release or relieve the franchise or property held thereunder from any of the liabilities of the lessor or grantor, or lessee or grantee, contracted or incurred in the operation [or] use, or enjoyment of the franchise or any of its privileges;" and that when read together the correct view is that if Newman had sued the Shoshone Light & Water Company alone, as he had a right to do, or had joined it as a defendant with the Great Shoshone Power Company, and had secured judgment against it, it could not, by transferring its property, have put it beyond the reach of Newman's judgment; and, furthermore, that the execution and putting in escrow of the deed by the light and water company after it had negligently constructed the line, and the delivery of the deed to the Great Shoshone Company after the accident, could not, in view of the provisions of the state Constitution heretofore referred to, defeat Newman's right to pursue the property conveyed and to require that it should first be devoted to the satisfaction of his judgment.

The agreement of July, 1912, between the light and water company and the power company was a contract for sale for all power plants, transmission lines, real estate, and all other property owned by the light and water company, as shown by the inventory of June 1, 1912. Under this contract the power company had taken possession on July 1, 1912, and was acquiring the property of the light and water company by payments out of the income accruing to it from operating the system. As a fact, before the bond was given to stay execution upon Newman's judgment, the power company had paid to the light and water company more than enough to pay the judgment claim, and subsequently, out of the income continued to pay, and after the receivership came the receiver went on and made further payments in excess of $7,000. When Newman sued the power company, September 10, 1913, he alleged that the light and water company maintained and operated the system under a franchise from the village of Shoshone until July 1, 1912, when the power company purchased and took over the system in its entirety, together with the franchise, and maintained and operated the system thereafter; that in 1911 the water company negligently extended its wires across the property of Newman and attached them to his barn; and that the power company, after the purchase and up to April 11, 1913, negligently maintained and operated the poles, wires, and electric system, and permitted electricity to pass through a side of his barn, and the current coming in contact with the barn and contents set the building on fire; and that by reason of negligence in construction by the water company, and because of negligence in maintenance by the power company, fire resulted.

The District Court correctly held that under the facts stated in Newman's complaint he could have sued the two companies in negligence— one as constructor and the other as operator. But he elected to claim damage from the power company, the sole operator when the damage was done. Having assumed such a position, the question is this: Is it equitable that, although the lien of the trustee and bondholders attached to the plant and properties of the light and water company transferred to the power company, solely by virtue of the covenant of the trust deed of the power company that the mortgage should embrace after-acquired property, such lien attached, free of any obligation to pay Newman's claim against the property of the corporation? To so hold, we think, would be a narrow construction. It is true, the originating delict was faulty construction by the water company, and that the immediate cause of action arose out of careless operation by the power company, but it arose while the operating company was acquiring the property by using the income from operation, and before the deed in escrow was delivered to the power company. Where there has been such an interrelation of possession and operation and method of payment, no principle will prevent the doing of equity as between mortgagor and mortgagee and creditors, by treating the Newman claim as entitled to preference over the claim of bondholders, especially if payment of it can be had out of funds realized from the sale of specific property or any part of it which was turned over by the constructing company to the buying operating company under the agreement of sale.

It is true, there was no lease between the two corporations, but there was an agreement to sell the property of the water company, and a deed placed in escrow. The legal title was in the water company, the equitable title in the power company, and if we assume that as between the vender and vendee, when the final payments were made to the water company and the deed was delivered, it related back to the time of its execution, nevertheless, under the circumstances the ends of justice do not require the application of that usual rule so as to defeat the claim of Newman. It is no strain to draw an analogy between such an actual situation and that which would have been presented if there had been a lease by the water company to the power company. There was an alienation. That the franchise itself may not have been under contract for transfer does not materially affect the question; for equity will treat the claim of Newman as if it were a fixed pre-existing liability of the water company, incurred in the enjoyment of a franchise before the property was finally sold, and therefore to be protected under the constitutional provision quoted. Seymour v. Boise R. R. Co., Limited, 24 Idaho, 7; 132 Pac. 427.

The District Court proceeded under the conviction that equity should protect the preference by taking hold of a fund directly traceable to the sale of certain property which had belonged to the water company. We think this was proper, and that it is just to order payment of the claim by the power company as an expense incident to operation by it. If, in the course of operation of an electric system, taken possession of under contract of purchase, such as there was here, the buying company carelessly allows an uninsulated wire, put up by the selling company to come in contact with a corrugated iron barn, and as a result of such negligence fire occurs, and damage is done, and judgment against the operating company is obtained, it seems to be no strain upon accounting methods to say that the payment for such damage may fairly be counted as an expense incident to the operation of the system, when the object of operation has been to make money wherewith to acquire title to the plant which has become part of the mortgaged property of the buying company.

Affirmed.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes