(No. 5061. May 27, 1929.)

R. H. PECK, LEO PECK and VERN PECK, Doing Business Under the Firm Name and Style of PECK BROTHERS LIVESTOCK COMMISSION COMPANY, Respondents, v. S. M. NIXON, Appellant.

[277 Pac. 1112.]

Walter H. Anderson, for Appellant.

Roy L. Black, for Respondents.

VARIAN, J.—This action was brought by respondents to recover the initial payment on a contract for the purchase of certain steers which, it is alleged, appellant refused to deliver. The case was tried to a jury, and resulted in a verdict in respondents' favor for the full amount prayed for, with interest.

Respondents are livestock commission brokers, and on February 10, 1925, at Pocatello, agreed to purchase from 116 to 120 head of two and three year old Durham and white-faced steers from appellant, at $5.85 per hundredweight, f. o. b. cars at Monida, Montana, where they were to be received and weighed. The essentials of the contract were indorsed on the face of a draft on the First National Bank of Logan, Utah, payable to appellant's order, for the down payment of $500, which draft was indorsed and cashed by appellant shortly after its delivery to him. A few days after the entering into of the contract, appellant delivered 116 head of steers at Monida, Montana, which had been driven from his ranch near Henry's Lake, Idaho. Before the cattle were loaded and while they were being weighed, respondent Vern Peck called appellant's attention to the fact that all of the cattle did not comply with the specifications of the contract; that there were three or four polled Angus steers (admitted by appellant), and several "Jerseys," that is, steers showing Jersey blood and not subject to classification as "white-faced" or "Durham" steers. Said respondent offered to adjust the matter by "cutting out" twelve head, and later by cutting out nine head. This adjustment was refused, but appellant consented to the cattle being loaded, with the understanding that their differences might be adjusted later, as the train had arrived to take them out of Monida. After the cattle were loaded, the cattle were billed out in respondents' names and the parties went to the caboose to adjust the payment due. After some attempted negotiation, appellant stated that all the cattle must be received by respondents or none. On respondents' refusal to settle on that basis, appellant demanded and received the bills of lading, and had the shipment rebilled in his own name. Appellant then took charge of the steers, and sold the train to another buyer. On demand, he refused to repay the down payment made at Pocatello on execution of the contract. Appellant admits there were three or four polled Angus steers among the 116 head delivered, but denies there were any Jerseys. He contends that no objection to

the grade of steers offered was made until after the shipment was loaded and bills of lading issued to respondent.

■■ It is contended that the evidence is insufficient to sustain the verdict because it does not show a right in respondent to refuse to accept the entire 116 head without cut or allowance. The evidence is ample to sustain respondents' theory of the case that the steers were all to be of certain kinds, i. e., "white-faced" and "Durham" breeds; that there were other kinds delivered to which respondents made timely objection and attempted to adjust the differences with appellant, who thereupon breached the contract by refusing to deliver any cattle under it. There was not a substantial compliance by appellant with the requirement of the contract as to the kind of steers called for. It was not sufficient that those not of the quality stipulated were in fact merchantable. Respondents were required to take only "white-faced and Durham" steers. (See 35 Cyc., p. 216, par. b.)

■■ It is next assigned as error that there was a variance between the pleading and proof as to the contract sued on. The first amended complaint pleads an "oral" contract, and also sets out *in haec verba* the written draft for $500 with the stipulations on its face, which was admittedly given for the down payment of the purchase price. While we do not think this contention is sustained by the facts, appellant has not shown that he was actually misled to his prejudice by the allegations of the first amended complaint. (C. S., sec. 6722; *Newman v. Great Shoshone & T. F. W. P. Co.,* 28 Ida. 764, 156 Pac. 111; *Aulbach v. Dahler,* 4 Ida. 654, 43 Pac. 322.) Nor can objection on account of variance between the pleading and proof be raised for the first time on motion for a new trial or on appeal to this court. (*Aulbach v. Dahler, supra; Gumaer v. White Pine Lumber Co.,* 11 Ida. 591, 83 Pac. 771; *Johnson v. Gary,* 18 Ida. 623, 111 Pac. 855; *Pomeroy v. Gordan,* 25 Ida. 279, 137 Pac. 888.)

■ Appellant alleged in his answer that he did not read the stipulations contained on the face of the draft for the down payment before cashing it; that he relied upon respondent Vern Peck to read it to him, and that Peck "fraud-

ulently and falsely read said draft, and omitted to read" therefrom the portion containing the terms of purchase. He *testified* that he did not have his glasses, and could not, and therefore did not, read the draft at the time it was delivered; *that no part of the draft was read to him* by Peck; and that he cashed it without reading it. Respondent Vern Peck testified that he read the entire draft (including all the stipulations as to the cattle) to appellant, who agreed to the stipulations thereof, before he delivered it. In the absence of proof of fraud, misrepresentation or deceit, appellant's failure to read the contract is not ground to set it aside. (*Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531; *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581; *Smith v. Thomas,* 42 Ida. 375, 245 Pac. 399; 13 C. J., p. 370; 6 R. C. L., p. 624.)

The theory of the case adopted by the trial court was right under the proofs, and it was not error to exclude all evidence of an oral contract prior to the acceptance of the draft and written contract dated February 10, 1925.

Judgment affirmed. Costs to respondents.

Budge, C. J., and Givens, T. Bailey Lee and Wm. E. Lee, JJ., concur.