(Nos. 5265, 5266, 5267.  January 25, 1930.)

J. W. SMEED et al., KARL J. HARTMAN and MORRIS HARTLEY, Respondents, v. STOCKMEN'S LOAN COMPANY, a Corporation, Appellant.

[284 Pac. 559.]

Bissell & Bird, for Appellant.

646

Frank E. Meek and Cleve Groome, for Respondent Hartley.

Rice & Bicknell, for Respondent Hartman.

Walter Griffiths, for Respondent Smeed.

BUDGE, J.—Respondents Smeed, Hartman and Hartley instituted separate actions against appellant and others for the purpose of recovering different sums alleged to be due for the care and feeding of certain cattle. The cases were consolidated for trial and hearing in this court upon appeal by the Stockmen's Loan Company from judgments in favor of respondents. They will be discussed separately hereinafter.

## SMEED CASE.

To secure the payment of a sum certain, Lewis L. Young and wife, on January 30, 1924, executed and delivered to the Stockmen's National Bank of Nampa a chattel mortgage, covering, among other property, a considerable number of cattle. The mortgage having become the property of appellant, action to foreclose the same was instituted on January 18, 1926.

Approximately three months after the foreclosure action was filed, or on April 15, 1926, certain of the cattle covered by the mortgage were placed with respondents Smeed for pasturing and feeding. Judgment foreclosing the mortgage was entered in favor of appellant September 26, 1927, and

on the same day execution and order of sale was entered in said cause and the sheriff levied upon and took into his possession the cattle theretofore in the possession of respondents Smeed. On September 29, 1927, respondents Smeed filed a claim with the sheriff for the possession of the cattle, and on October 1, 1927, filed their complaint in this action. Two causes of action are set out in respondent Smeed's complaint, one for the foreclosure of the agister's lien to enforce the payment of the sum alleged to be due for feed and pasturage of the cattle by them, and the other in replevin for recovery of their possession. The trial court found and concluded that respondents had a lien upon the cattle, for feed and pasturage, prior and superior in right to the lien of the chattel mortgage of appellant, and appropriate judgment for the satisfaction of the claim was duly filed. The Stockmen's Loan Company, mortgagee in the chattel mortgage, has appealed from the judgment.

It is asserted in appellant's brief, and we think correctly so, that the cause was tried upon the one issue, namely, "whether the mortgagee-appellant or the respondents-lien claimants had the first lien."

The agister's lien statute, C. S., sec. 6412, so far as at this time material, provides that "persons pasturing live stock of any kind, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding or pasturing such live stock."

It was alleged in respondents' complaint, and the trial court found, that the cattle were delivered to respondents Smeed to be fed and cared for by the owners, with the knowledge and consent of the mortgagee, appellant. In *Marnella v. Froman*, 35 Ida. 21, 204 Pac. 202, it was held that the lien of a chattel mortgage, duly recorded, is superior to an agister's lien, when the former is prior in time, unless the services upon which the latter is based were performed with the consent of the mortgagee, either express or implied from the circumstances. To like effect, see *Vollmer Clearwater Co. v. Union etc. Co.*, 43 Ida. 37, 238 Pac. 865; *Cather v. Spencer*, 55 Okl. 511, 154 Pac. 1130; *Lynde v. Parker*,

155 Mass. 481, 30 N. E. 74. Although the evidence is sharply conflicting thereon, there is in the record before us substantial evidence to support the trial court's finding that the cattle were delivered to respondents Smeed for pasturing and feeding with the knowledge and consent of the mortgagee. By an unbroken line of decisions of this court, the finding will not be disturbed in such circumstances.

There is no merit in appellant's contention that, due to the fact that respondents failed to intervene in the foreclosure action, they were bound by the judgment rendered therein, if we are correct in upholding the finding of the trial court with reference to the delivery of the cattle to respondents with the knowledge and consent of the mortgagee, as in such case respondents' interest could not be considered as adverse to that of appellant's and the doctrine of *lis pendens* would have no application.

Appellant urges that the court erred in allowing different items and amounts as part of respondents' lien and in incorporating the same in the judgment, upon the ground that the same were excessive. We have carefully examined the entire record and do not find that there was any controversy in the trial court as to such items or amounts, now objected to. An itemized statement of the various amounts making up the whole of respondents' lien was introduced in evidence without objection. Appellant relied solely upon the one issue as to the priority of the liens, and upon appeal is not permitted to inject other matters.

It is contended that the trial court erred in allowing respondents a lien for the six months' period immediately following their taking possession of the cattle, for the reasons that (1) no action was taken by respondents within the statutory time, after supplying pasturage, to enforce their lien and sell the property as required by C. S., sec. 6412; (2) appellant was not a party to an arrangement between the mortgagor and respondents for an extension of time for the payment of the feed bill, and the lien for the period prior to such arrangement was thereby destroyed; (3) under the express terms of the contract for the feed and pasturage, the

feed bill was not payable until the cattle were removed from respondents' pasture. With these contentions we are not in accord. From the record it clearly appears that before the end of the six months' period, the mortgagor, with the knowledge and consent of appellant, agreed with respondents for a continuation of the furnishing by respondents of pasturage and feed for the cattle. This agreement was also coupled with the further agreement that additional cattle be fed and pastured, and was carried out. It would be a harsh holding, in the face of such an agreement of extension, that the failure of the lienholders to bring an action within sixty days from the expiration of the six months' period worked a forfeiture of their lien. The agreement for respondents to continue feeding the cattle in question, as well as others added thereto, had the effect of continuing the lien, and the action was brought within the statutory period after the cattle were taken from respondents. The court awarded a lien from the date of delivery of the cattle to respondents in the first instance until they were taken by the sheriff under levy of execution in the foreclosure action instituted by appellant.

Other errors assigned will not be discussed for the reason that they are not of such importance as to affect the judgment. The judgment in favor of respondents Smeed is affirmed.

## HARTMAN CASE.

The pleadings and facts in the Hartman case being in the main similar to the Smeed case, it will not be necessary to do more than briefly set out a portion of the testimony.

In February, 1927, the mortgagor, Young, made a contract with Hartman to take about 300 head of the cattle covered by the chattel mortgage and feed them hay, at an agreed price. These cattle were delivered to Hartman and the terms of the contract complied with. Early in March, 1927, Hartman received a letter from Mr. Bissell, attorney for appellant, in which it was stated, among other things, that Bissell had learned Hartman had some of the cattle covered by the mortgage of appellant, that a foreclosure

action had been begun, and appellant would not be responsible for the feed. Hartman immediately took the letter to Mahoney, then president of the appellant company. Mahoney read the letter and told Hartman that Young would pay for the feed. Hartman pressed Mahoney to know how he would get his money if Young was not able to pay for the feed, and Mahoney finally told him the cattle must be fed and that the cattle would be good for the feed. When the hay was fed, Young was unable to make payment and wanted to remove the cattle. Hartman refused to permit Young to remove the cattle and threatened to sell enough of them to pay the feed bill. Thereafter it was agreed Hartman's lien should not be impaired by removal of the cattle, and with this understanding the cattle were taken to the Hartley place for pasturage. Hartman went along with the cattle and was present when they were placed for pasturage at Hartley's. As in the Smeed case, the court found that the cattle were fed by Hartman with the knowledge and consent of appellant, and that Hartman had a lien prior and superior to appellant's mortgage lien, for the hay fed and the labor in caring for the cattle during the time they were in the possession of Hartman.

There was no unconditional and voluntary surrender of the cattle by Hartman to the mortgagor. Appellant's interest in the cattle was acquired before their removal to Hartley's, and appellant is not in a position to contend for the application of the rule as to a *bona fide* purchaser, without notice. Nor can the fact that a number of the cattle delivered to Hartman were withdrawn from the Hartley pasturage serve to defeat the Hartman lien upon those remaining at the Hartley place when seized by the sheriff. *Gould v. Hill,* 43 Ida. 93, 251 Pac. 157, 171, wherein the following language is used as to the waiver of loss of such a lien:

"As a general rule, a common law or a statutory lien, dependent upon possession, is waived or lost, by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches. How-

ever, the lien is not waived or destroyed where there is an intention to preserve the same, the lienholder only conditionally parting with possession.''

■ And, as stated in 3 C. J., p. 35, ''an agister's lien is not, as between the parties or third persons having notice thereof, lost by change of possession not inconsistent with it and not under circumstances indicating an intent to waive, relinquish, or abandon it.'' (*Becker v. Brown*, 65 Neb. 264, 91 N. W. 178.)

The judgment in favor of respondent Hartman is affirmed.

## HARTLEY CASE.

■ There was delivered to Hartley on May 7, 1927, 187 head of the cattle covered by appellant's mortgage, under a contract to pasture and care for them during the summer. By mutual agreement, between May 7 and June 29, 1927, a certain number of the cattle were removed from Hartley's place. The rest remained in his possession until seized by the sheriff, on September 28, 1927, under the foreclosure proceedings heretofore referred to. A lien was awarded Hartley for the care and pasturage of the cattle remaining in his possession, prior in right to the mortgage lien of appellant covering a period of time subsequent to that for which Hartman was allowed a lien and entirely separate and distinct therefrom. The trial court found, as in each of the foregoing cases, that the cattle were delivered to Hartley by and with the knowledge and consent of appellant, and the finding is supported by substantial evidence. The cattle being delivered to Hartley with the knowledge and consent of appellant, the contract for their feed and pasturage was the contract of the mortgagee as well as the mortgagor, which is also true in the Smeed and Hartman cases.

The record in this case discloses that while the cattle were in Hartley's possession, officers of the appellant company upon more than one occasion visited the Hartley place, inspected the cattle, and had full knowledge of the fact that they were being cared for and pastured by Hartley. It fur-

ther appears that Hartley had a conversation with Mahoney, then president of the appellant company, in which Mahoney stated that the cattle must be fed and were good for the feed. It also appears that Young discussed the Hartley pasture with Mahoney, in March and April, 1927.

In *Howes v. Newcomb*, 146 Mass. 76, 15 N. E. 123, 125, the court said:

"Undoubtedly an implied consent will answer the requirements of the law, and in every case of this kind the inquiry is whether such implied consent is found. That depends, where animals are left with a mortgagor by a mortgagee, not only upon the terms of the express contract relating to them, but also upon all the circumstances surrounding the transaction indicating the expectation of the mortgagee as to the management of them by the mortgagor. If from these the mortgagee may be presumed to have understood that the mortgagor would take them to a stable keeper to be boarded, and no objection was made, such consent would be implied; otherwise, it should not."

These cattle were delivered to Hartley pending the action in foreclosure, and Hartley's claim did not mature until after the cattle were seized by the sheriff. From a reading of the entire record in this case the conclusion is inescapable that appellant company's officers were fully aware of the fact that Young was not financially able to feed and pasture the cattle covered by the mortgage. Whatever property Young had was covered by appellant's mortgage, and in appellant's judgment Young was not entitled to any further advancements, and none was made him. Appellant was also cognizant of the fact that Young was not in a position to obtain money elsewhere, that the cattle, as stated by Mahoney, must be fed, otherwise appellant's security would be lost, and that the cattle were good for the feed.

The judgment in favor of respondent Hartley is affirmed.

While many technical questions are raised in connection with these cases, we are not convinced that the trial court committed prejudicial error. We have purposely avoided a more lengthy discussion of the facts, the real de-

cisive question being whether the cattle were delivered to the different lien claimants for feed and pasturage with appellant's knowlege and consent, either express or implied. Upon this point, as previously stated, there is a direct conflict in the evidence, but there is substantial evidence to support the findings of the trial court. Where there is a conflict in the evidence but sufficient proof in the record, if uncontradicted, to support the judgment, the same will not be reversed.

Another element tending to support the judgment of the trial court is the showing that from the commencement of the action in foreclosure by appellant, and even prior thereto, Young was making continuous efforts to be refinanced, assisted to greater or less extent by appellant. The lienholders were given to understand that Young would be refinanced and that their feed bills would be paid. It was in view of this situation that extension agreements in regard to the payment of the feed bills were entered into by the parties, and from which it may be inferred the lien claimants did not sooner move to protect their rights.

Each of the respondents is awarded costs.

Givens, C. J., and T. Bailey Lee and Varian, JJ., concur.