(No. 6065.   December 22, 1933.)

EDWARD DUTHWEILER and JOSEPH FOSTER, Appellants, v. E. D. HANSON, Respondent.

[28 Pac. (2d) 210.]

James A. Wayne and H. E. Worstell, for Appellants.

Chas. E. Horning and Walter H. Hanson, for Respondent.

BUDGE, C. J.—This action was instituted August 11, 1931, by appellants to require an accounting by respondent of the transactions of a copartnership composed of appellants and respondent from the date of its inception, June 1, 1928, at which time the parties entered into an oral partnership agreement for the operation of a mining lease or license of a portion of the Morning Mine, to March 2, 1931, when the partnership was dissolved by mutual consent. The cause was tried to the court, and findings of fact and con-

clusions of law were made to the effect that there was an undistributed and unexpended balance of net profits to which each of the parties was entitled in certain named amounts, and to the further effect that respondent legitimately collected and was entitled to retain under the partnership agreement, from the copartnership, salary in the total amount of $4,050 during the life of the copartnership, and judgment was entered in favor of appellants for the amounts of unexpended net profits found to be due to each of them. From that portion of the judgment in favor of respondent, permitting him to retain the sum of $4,050, salary from the partnership funds, and from an order denying appellants' motion for a new trial, this appeal was taken.

The principal question presented is whether, under the pleadings and evidence, the trial court was justified in finding that respondent was entitled to retain $4,050, as salary for directing, supervising and managing the operations of the partnership. Assignments of error one to thirteen, inclusive, and assignment twenty-seven, based upon the general question presented, are grouped and discussed in the briefs under the one proposition, as stated by appellants, that:

"The findings and decree of the Court, insofar as they allow the defendant $4050 salary, are inconsistent with the pleadings and unsupported by the evidence."

■■ Appellants contend that the findings of the court to the effect that the partners had orally agreed that respondent should receive a salary from the partnership for supervising and managing its operations at the rate of $50 per month for the first eight months, $100 per month for the next five months, and thereafter at the rate of $300 per month, are at variance with the pleadings and inconsistent with the admissions made in defendant's answer. That is, appellants first contend that respondent admitted by his answer that the oral agreement was that partners were to receive equal thirds of the "profits" of the partnership, and thereby admitted that the oral agreement did not provide that he should receive a salary for managing, supervising and directing the operations of the partnership. Appellants

instituted this action seeking an accounting of the partnership receipts and praying for a recovery of ''profits'' of the partnership allegedly due them. The complaint, after alleging the entering into of the oral partnership agreement, the operation of the mine from June 1, 1928, to March 2, 1931, and that the partnership was dissolved by mutual consent by a written agreement on March 2, 1931, then alleges in paragraph three that although requests had been made therefor, defendant ''has refused and still refuses to come to an accounting with the plaintiffs.'' The last paragraph of the complaint, paragraph IV, contains the allegations which are material to the first question presented, and reads as follows:

''That during the entire life of said co-partnership, these plaintiffs and the defendant were equal partners, each owning a one-third interest in said co-partnership, and each being entitled to share in all partnership profits in the proportion of one-third; that during the life of said co-partnership, large profits were realized from the operation of said lease by said co-partnership, to-wit: more than $60,000, of which said amount each of said partners have been paid approximately $16,500; that the remainder of said profits, the exact amount of which is to plaintiffs unknown, has been appropriated by the defendant and said defendant has at all times failed, neglected and refused to account to said partnership or to these plaintiffs, his partners, for said excess of profits over and above the profits so divided among the partners as aforesaid; that plaintiffs are informed and believe, and upon such information and belief allege the fact to be, that the defendant has wrongfully appropriated about $8,000 of profits belonging to said co-partnership, under various guises, *and among other things plaintiffs allege that the said defendant has taken out of said partnership profits, wrongfully and without any authority whatsoever, and without rendering any services therefor, $2050 as a pretended salary to himself, $1900 for pretended personal expenses, which was not spent for partnership purposes and was taken by the defendant from partnership profits without right, and without authority,* approximately $1425 of moneys

which had been reserved for the payment of taxes (there having been set up out of partnership profits a tax reserve of $2109.87, and the actual taxes paid out of said reserve having amounted to only $683) and the sum of $726.27 profits realized from ore shipments during the month of February, 1931; . . . . ''

Respondent's answer to this complaint admits that the oral partnership agreement was entered into, admits that it was dissolved by mutual consent, but denies that there had been no accounting, and in paragraph IV of the said answer respondent alleges as follows:

''Defendant denies each and all the allegations set out in paragraph IV of plaintiffs' complaint, except that defendant admits that during the life of said co-partnership plaintiffs and defendant were equal partners, each owning a one-third interest in said co-partnership, and each being entitled to share in all of the net profits of said partnership, in the proportion of one-third each, and admits that during the life of said co-partnership large profits were realized from the mining operations conducted by said co-partnership; and defendant particularly denies that profits of more than $60,000 were realized from the mining operations of said co-partnership and denies that the profits so realized exceeded the sum of $53,148.79.''

It thus appears, that while respondent admits that each partner was ''entitled to share in all of the *net profits* of said partnership, in the proportion of one-third each,'' respondent specifically denied each and all of the allegations of paragraph IV of the complaint not admitted, and thereby specifically denied having taken *''out of said partnership profits,* wrongfully and without any authority whatsoever and without rendering any services therefor'' any or all of the sums of money alleged to have been so taken. It would appear obvious that any expenses of the partnership, which expenses would of course include any salaries agreed to be paid to the partners for work performed for the partnership, including any salary for respondent that may have been agreed upon at the time of entering into the oral partnership agree-

ment, could not be included in the term "profits" or "net profits" of the partnership. In other words "profits" of the partnership would be that sum remaining, if any, after all expenses, including salaries or wages, were deducted from the amounts realized by the partnership from its operations. However the pleadings may be construed, there are at least no allegations therein from which it may be said that respondent admitted or alleged that the oral partnership agreement did not provide that he was to receive a salary for managing the partnership operations, but even conceding that the complaint alleges that respondent took or retained as salary and expense the amounts alleged in the complaint from *funds* of the partnership, wrongfully and without any authority whatsoever and without rendering any services therefor, respondent's answer specifically denies such allegation.

The second proposition urged is that there was a variance between the pleading and the proof. Whether or not there was such a variance, appellants have not shown that they were actually misled to their prejudice by reason thereof. (I. C. A., sec. 5–901; *Peck v. Nixon,* 47 Ida. 675, 277 Pac. 1112; *Newman v. Great Shoshone & T. F. W. P. Co.,* 28 Ida. 764, 156 Pac. 111; *Aulbach v. Dahler,* 4 Ida. 654, 43 Pac. 322.) The record discloses that appellants were advised by respondent's opening statement of the nature of the proof respondent intended to introduce, said statement being in part as follows:

"The evidence will show that at the meeting in Hanson's room it was agreed that each Foster and Duthweiler should work and receive $6.00 per day, that Mr. Hanson should have the entire direction of the work, that he would run the business end of it, also that he was to receive for his services $50.00 per month for the first eight months, $100 per month thereafter for the next five months and from that time on $300 per month as long as the lease was on a paying basis, he was paid accordingly."

It appears from the record that, notwithstanding the undoubted notice given by respondent, nevertheless the ques-

tion of variance was not timely raised, the well-settled rule being that objection on account of variance between the pleading and proof cannot be raised for the first time on motion for a new trial or on appeal to this court. (*Peck v. Nixon, supra; Pomeroy v. Gordon*, 25 Ida. 279, 137 Pac. 888; *Maw v. Coast Lumber Co.*, 19 Ida. 396, 114 Pac. 9; *Johnson v. Gary*, 18 Ida. 623, 111 Pac. 855; *Aulbach v. Dahler, supra.*)

██ Appellants' third point presents the question of the sufficiency of the evidence to support the findings and decree of the court that the oral agreement provided that respondent was to receive a salary for services as hereinbefore set out. Respondent testified that the oral agreement was entered into one evening in his room at the Stevens Hotel, Foster, Duthweiler, Axel Johnson and himself being present. In the direct examination of respondent the following appears:

"Q. Mr. Hanson, will you now go ahead and tell the court what further agreement was made, if any, between you, Foster and Mr. Duthweiler in your room at the Stevens Hotel with reference to this partnership operation?

"A. We was each to have one-third equity in the lease and they were to receive the going wages at that time it was paying $6.00 per day, for going in and doing the ordinary labor, going with the rest of the men working, and I was supposed to receive $50.00 per month for the first eight months, $100.00 for the next five months and $300.00 per month for the rest of the time as long as the lease was paying.

"Q. Was that part of the agreement made that evening?

"A. Part of the agreement made that evening.

"Q. What other arrangements, if any, was made with reference to the further development of the lease?

"A. I was to have charge, take full charge and put up all the expenses for the further development, stand all the expenses."

Respondent's testimony is corroborated by the testimony of Axel Johnson, hired as the bookkeeper of the copartner-

ship. The parties are apparently agreed, as their testimony discloses, that the partnership agreement was that each was to have a one-third equity; that the profits were to be equally divided; that appellants were to receive going wages for labor they performed in the mine; and that respondent was to have the supervision and management of the operations, and was to and did put up all expenses for further development, which amounted to some $8,000. As to that portion of the agreement related by respondent as to the salary he was to receive there is a direct conflict in the evidence as between both appellants and respondent and Axel Johnson. Appellant Duthweiler in rebuttal testified as follows:

"Q. Will you state whether at any time in the presence of Mr. Foster, Mr. Hanson, Mr. Johnson and yourself, you ever discussed or agreed to pay Mr. Hanson a salary of $50.00 per month for the first eight months of the operation under this lease, $100.00 per month for the next five months and $300.00 per month thereafter?

"A. No, sir.

"Q. State whether or not there ever was such an agreement?

"A. No, sir, there never was."

Appellant Foster in rebuttal testified as follows:

"Q. You heard the testimony of Mr. Hanson yesterday in substance and effect that you, Duthweiler, Hanson and Axel Johnson met in Hanson's room at the Stevens Hotel and as a part of this partnership agreement agreed that Mr. Hanson was to have a salary of $50.00 per month for the first eight months, $100.00 per month for the next five months and thereafter $300.00 a month as a salary, will you state to the court whether or not such a conversation ever occurred?

"A. It never occurred."

There is a direct conflict in the evidence that Hanson was to receive a salary of $50 per month for the first eight months, $100 per month for the next five months, and thereafter $300 per month. It would hardly seem reasonable, although but a mere circumstance, that Hanson was to put up

all the money, and it was a substantial sum, and undertake certain liabilities in addition thereto and to take the responsibility of the entire management of the mine and to receive as his full compensation but a third of the net profits. The trial court was in a better position than this court to pass upon the facts and circumstances as disclosed during the trial. To him was given the benefit of observing the witnesses upon the stand, their manner of testifying and the probability or improbability of the truth or falsity of their testimony, and in such circumstances we know of no more wholesome rule to be invoked than the one so often announced, namely, where there is a conflict in the evidence, but sufficient substantial evidence, if uncontradicted, to support the findings and judgment, they will not be disturbed. (*Stephens v. Stephens*, 53 Ida. 427, 24 Pac. (2d) 52; *Patrick v. Bisbee*, 52 Ida. 369, 15 Pac. (2d) 730; *Boise Payette Lumber Co. v. Bales*, 52 Ida. 762, 20 Pac. (2d) 214; *Smeed v. Stockmen's Loan Co.*, 48 Ida. 643, 284 Pac. 559; *Foss v. Dalquist*, 48 Ida. 30, 279 Pac. 407; *Larsen v. McKenzie*, 41 Ida. 715, 241 Pac. 607; *Morrison v. Morrison*, 38 Ida. 45, 221 Pac. 156; *Walling v. Walling*, 36 Ida. 710, 214 Pac. 218; *Independence Placer Min. Co. v. Knauss*, 32 Ida. 269, 181 Pac. 701; *Darry v. Cox*, 28 Ida. 519, 155 Pac. 660.)

Assignments of error numbered fourteen to twenty-six, inclusive, seek to predicate error upon the admission of certain evidence relating to negotiations preceding the partnership agreement, conversations leading up to the agreement, condition of appellants' sublease and their operations thereunder, profits made, debts owed by Foster and Duthweiler at or about the time of the partnership agreement and also touching the matter of the negotiations for the sale of the sublease by Duthweiler and Foster to other parties, and like matters, which appellants insist were in part hearsay and in part immaterial. From an examination of the record it appears that appellants introduced testimony of a like character to that which is attacked and upon which error is sought to be predicated. Much of this evidence complained of was admitted without objection. While it may be con-

ceded that certain testimony was improperly admitted, we are not constrained to hold that, in view of the record, the admission of such testimony constituted prejudicial error, and particularly in view of the fact that this cause was tried before the court and the court received part of such testimony after holding that the same was immaterial, and furthermore, the findings of fact, conclusions of law and judgment disclose upon their face that the judgment was not based upon the answers to the hypothetical question complained of. And as was held in *Nelson Bennett Co. v. Twin Falls L. etc. Co.,* 14 Ida. 5, 34, 93 Pac. 789, 799:

"Numerous errors have been assigned against the rulings of the court in the admission and rejection of evidence. . . . . Upon an examination of them, however, we are satisfied that the rulings of the court have generally been correct—in some instances perhaps erroneous; but it is clear to us that the appellant has not been injured or prejudiced thereby. This was an equity case and no question of fact was submitted to a jury, and in such cases the rule as to the admission of evidence is much more liberal, and the appellate court will hesitate to reverse a judgment on account of an erroneous ruling in the admission of evidence unless it appears that the court was proceeding on a wrong theory of the case, or that the admission or rejection of the evidence offered misled the losing party or surprised him and in some way deprived him of some right or embarrassed him in the presentation of some substantial part of his cause of action or grounds of defense."

See to the same effect: *Seeley v. Security Nat. Bank,* 40 Ida. 574, 235 Pac. 976; *Blackfoot City Bank v. Clements,* 39 Ida. 194, 207, 226 Pac. 1079; *Morton Realty Co. v. Big Bend I. & M. Co.,* 37 Ida. 311, 218 Pac. 433; *Bales v. Weaver,* 36 Ida. 704, 213 Pac. 342; *Darry v. Cox,* 28 Ida. 519, 155 Pac. 660.

We are satisfied that no error was committed by the trial court such as would justify a reversal of the judgment. The judgment is affirmed, with costs awarded to respondent.

Givens, Morgan, Holden and Wernette, JJ., concur.