The Supreme Council of the Catholic Benevolent Legion v. Boyle.

No. 1,289.

THE SUPREME COUNCIL OF THE CATHOLIC BENEVOLENT
LEGION v. BOYLE.

NOTICE.—Summons.—Return, Sufficiency of.—Corporation.—Reversal of Judgment.—Where subordinate councils of a corporation are the agents of the supreme council, and the officers of the subordinate council are its agents, and, therefore, subagents of the supreme council, service on the president, secretary and treasurer of St. Julien Council No. 89, being a subordinate council of said corporation, the Catholic Benevolent Legion, the return showing that no other superior or higher officers of the corporation were found in the county, such service is sufficient to give the court jurisdiction, and where there is nothing in the return of service to show that the persons served were the officers or agents of defendant, but such fact is shown when taken in connection with defendant's answer, and the return might have been amended in the trial court, the cause will not be reversed for such intervening error, where the ultimate judgment is right.

ESTOPPEL.—Defense.—Delinquencies of Defendant's Agent.—In an action, the defendant can not be heard to interpose the delinquencies of its own agency or instrumentality to defeat the action.

LIFE INSURANCE.—Soliciting Agent.—Power to Waive Conditions of Application.—Benevolent Society.—A soliciting agent to take applications for insurance may waive such conditions of the application as do not relate to the by-laws, and this principle applies as well to benevolent societies as to ordinary insurance companies.

SAME.—Death of Insured.—When Sufficiently Established.—Evidence.— The fact that the insured went to the lake to bathe, the finding of his wearing apparel near by, the footprints in the sand leading to the water, the dangerous condition of the bottom of the lake at that point, together with the unexplainable absence and failure of the insured to return, all tend to prove death by drowning, and the jury might legitimately infer death by such means.

SAME.—Evidence.—Death of Insured.—Drowning of Others at Same Place.—In such case, evidence that other persons were drowned at the same place is admissible as tending to show that the place where the insured went to bathe was dangerous.

ASSIGNMENT OF ERRORS.—Joint Assignment.—Instructions to Jury.— An assignment of error that the court erred in giving several instructions, naming them conjunctively, can avail nothing unless all are bad.

VERDICT.—Sufficiency of Evidence.—The Fact of Death.—Insurance.— That the evidence is sufficient to sustain the verdict, see opinion.

The Supreme Council of the Catholic Benevolent Legion *v.* Boyle.

From the Allen Superior Court.

*W. P. Breen* and *J. Morris, Jr.*, for appellant.
*W. Leonard* and *E. Leonard*, for appellee.

LOTZ, C. J.—The appellant, the Supreme Council Catholic Benevolent Legion, is a corporation organized under the laws of the State of New York. The particular business and objects of the corporation is to unite fraternally all male Roman Catholics, personally acceptable, of sound bodily health, between the ages of eighteen and fifty-five years, for social, benevolent, and intellectual improvement, and to afford moral and material aid to its members and their dependents by establishing a benefit fund for the relief of sick and distressed members, to be paid to such members as shall become permanently disabled, or to the family or dependents of such members in case of death. Its principal office and place of business is in Kings county, State of New York.

By its constitution and by-laws, the method of accomplishing the purposes of its incorporation and of transacting its business is prescribed. One grand or supreme council is created, which is authorized to issue charters to State and subordinate councils. All the State and subordinate councils are subject to the control of the supreme council. No person can become a member of the association except through the medium of a subordinate council. The subordinate councils are organized in much the same manner as the supreme council, with similar officers and agents authorized to transact business.

The benefit fund, payable upon the death of a member, is divided into six different grades or amounts. These funds are derived by levying and collecting *per capita* assessments upon the members, the amount of the assessment depending upon the age of the member when

admitted to membership, and grade or amount to be paid on the certificate issued to him.

A subordinate council, known as St. Julien Council, No. 89, was established in the city of Fort Wayne, in Allen county. William Boyle became a member of St. Julien Council, and the supreme council, on the 6th day of March, 1888, issued to him a beneficiary certificate for the sum of $2,000, payable to the appellee, Anna Boyle, wife of said William, upon the conditions therein named. The appellee brought this action, based upon the beneficiary certificate, alleging the death of William Boyle while a member in good standing in said order. She obtained a judgment in the sum of $2,209.75, to reverse which this appeal is prosecuted.

The first assignment of error discussed by appellant's counsel is that the trial court erred in overruling the motion to set aside the sheriff's amended return to the summons. The appellant appeared specially for the purpose of making this motion. The amended return shows that the summons was served upon certain persons who are described respectively as president, secretary, and treasurer of St. Julien Council, No. 89, being a subordinate council of the Catholic Benevolent Legion.

The return concludes as follows: "No other superior or higher officers of said company found in my county."

The statute (section 318, R. S. 1894) provides that process against either a domestic or foreign corporation may be served on its chief officer, and if such chief officer be not found in the county, then upon its cashier, treasurer, director, secretary, clerk, general or special agent. There is nothing in the return which indicates that the persons served were either officers or agents of the appellant. Nor is there anything to show that St. Julien council was the agent of the supreme council. The statute requires that the summons shall be served

upon some person authorized to receive such service. It is the duty of the person bringing the action to point out and indicate to the officer the person or persons upon whom the service should be made, and it is the duty of the officer to serve such person or persons in the order named in the statute, and make his return accordingly. The complaint can not·be looked to in order to determine the sufficiency of the return.

The service, in fact, must be made on such person as the statute directs, and an allegation in the complaint as to who are officers or agents will not vary the requirements of the statute, if in truth such persons are not officers or agents. The return should show that the defendant (the appellant) was served by reading the process to the officer or agent named in the statute. The return is insufficient, and the court should have sustained the motion to set it aside. But this error is not necessarily reversible error. No judgment shall be reversed for any defect in form, variance, or imperfections contained in the returns which might, by law, have been amended in the court below, when it appears that the merits have been fairly tried and determined. Section 670, R. S. 1894.

With the appellant's answer filed in this case, is set out a copy of the constitution and by-laws of the supreme council, and of the subordinate councils, and from these it appears that the business of the supreme council, so far as pertains to the admission of members, collecting assessments and.making proof of death and disability of members are concerned, is done through and by the subordinate councils. The subordinate councils are the agents of the supreme council. The officers of the subordinate council are its agents, and, therefore, subagents of the supreme council. When the proper agent of a corporation in the county is served with process,

this is sufficient to give the court jurisdiction. The answer, taken in connection with the return, shows that the proper agent of the appellant was actually served with process, and the return might have been amended in the court below. Where the ultimate judgment pronounced by the court is right, no intervening error will avail in securing a reversal.

Two other errors assigned by appellant, for which it is claimed the cause should be reversed, are the overruling of its demurrer to the second paragraph of the complaint and sustaining appellee's demurrer to the second paragraph of answer. Each of these rulings presents the same question. We will consider the latter only.

The gist of the second paragraph of the answer is that the constitution and by-laws of the Catholic Benevolent Legion (which are made a part of the pleading) provide that in case of the death of a member in good standing, the subordinate council of which the deceased was a member shall appoint a committee to ascertain the cause of death and the circumstances attending the same, and make a report thereof to the subordinate council; that such report, together with proof of death properly attested, and an official notice of such death, stating the name, age at date of admission, number of benefit certificate, date and cause of death, amount paid to benefit fund, and number of grade of deceased, shall be forwarded to the supreme council. That no other or different method of notifying the supreme council of the death of a deceased member is provided for in the by-laws; that St. Julien Council had notice of the death of said William Boyle, but had neglected and refused to appoint a committee to inquire concerning the death of said Boyle, as required by the laws of the society in order to notify the supreme council of such death; that no

such proofs of death, and no such report of said committee, were ever presented to the appellant, as in the by-laws provided, which said by-laws were in full force continuously from the time the application of the said Boyle was presented until the time when his death is alleged to have occurred.

It is alleged in the complaint that immediately after the death of William Boyle the appellant was furnished with notice of such death, and that appellee frequently demanded payment of her certificate. There is nothing in the by-laws that required the appellee to make proof of the death of her husband, either to the subordinate or supreme council. When the subordinate council received information of the death of one of its members, it was its duty to make the necessary proof to the supreme council. St. Julien council was an agency or instrumentality created by the appellant. If its own instrumentalities failed to act it can not be heard to interpose their delinquencies to defeat this action.

It appears from the allegations of the complaint, that William Boyle was drowned on the 11th day of July, 1891, and this action was commenced June 18, 1892.

The appellant had ample time in which to ascertain the fact of the death. There was no error in sustaining the demurrer to this paragraph of answer.

The lower court overruled a demurrer to the second paragraph of appellee's reply to appellant's third paragraph of answer. This ruling is assigned as error.

The third paragraph of answer alleges that, in the application of William Boyle, which is made a part of the certificate sued on, and a copy of which is attached to the answer, he (Boyle) stated his age as between 36 and 37 years, which he knew, at the time, to be false; that his age, at the time he signed the application, was between 45 and 46 years; that the validity of the certificate

sued on depended upon the statement of Boyle as to his age being true; that, therefore, appellee ought not to recover in her action.

The second paragraph of reply to this answer alleges, in substance, that Boyle, at the time of signing his application, did not know his true age, and so informed Father O'Leary, the spiritual director, and Thomas Meegan and Henry Fry, "agents of the defendant," at the time he made his application; that said Meegan and Fry "prepared the application of the said Boyle for said certificate;" that, therefore, appellant is estopped to claim as a defense the matter set up in said answer.

Appellant's learned counsel, in discussing this question, say: "The precise question to determine, it seems to us, is, whether or not Father O'Leary, Meegan and Fry, who, it is alleged, took the application of Boyle to become a member of St. Julien Council, No. 89, were such agents of the Catholic Benevolent Legion that they could waive any provisions of its constitution and laws relating to the terms and conditions upon which persons could be admitted as members and become entitled to participate in the benefit fund of the order."

This is the only objection urged against this paragraph of reply. If any others exist, they are waived by the failure to present them. The appellant earnestly insists that a different rule prevails with reference to waiver of conditions in the application for membership and insurance in charitable and benevolent societies from that which controls in the ordinary stock and mutual insurance companies, which are organized for profit, and which send out paid agents to solicit or write insurance for them; that no officer or agent of an incorporated society of the character to which the appellant belongs can waive any of the conditions in the by-laws. The authorities seem to support the proposition that the officers

and agents of charitable and benevolent societies with insurance features have no power to waive express stipulations in their certificates or in their by-laws, which relate to the substance of the contract, although they may waive such as relate merely to the proof of loss. *Evans* v. *Tremountains Ins. Co.*, 9 Allen, 329; *McCay* v. *Roman Catholic Ins. Co.*, 152 Mass. 272; *Bremer* v. *Chelsea, etc., Ins. Co.*, 14 Gray, 203.

The direct averment in the reply is that the persons named were the agents of the appellant.

We know of no substantial reason why a society like the appellant may not employ agents to solicit membership and pay them for their services. There is nothing in the constitution and by-laws of the society that prevents it. Such an agent might waive the conditions of the application which do not relate to the by-laws, the same as an agent of the ordinary insurance companies.

There is nothing, in the application, relating to the by-laws, except that the applicant agreed "to conform in all respects to the laws, rules, and usages now in force, or which may hereafter be adopted by the Legion." Boyle, the applicant, by the admissions of the answer, was eligible to membership. He was between the ages of eighteen and fifty-five. The representations concerning his age only affected the amount of his assessments, and not his eligibility. The by-laws provided that "any person obtaining admission into the Legion by false or fraudulent statements, concealment, or evasion of facts regarding personal or family history, or present condition of health, invalidates his benefit certificate, and he shall be liable to expulsion therefor."

It is further provided that "a member who shall have falsely answered questions in his medical examination with regard to health or habits, or who made any false statement in his application for membership with regard

to age, habits, or character, or in any way used deception to gain admission to the Legion shall, on conviction thereof, be expelled, and forfeit all benefits to which he or his beneficiaries might otherwise be entitled."

There are other provisions relating to the method of preferring charges and of trial and expulsion for the violation of the clauses above set out. These provisions all relate to proceedings which may be taken against the member in his lifetime, and not against the beneficiary named in the certificate after the death of the member. The forfeiture spoken of in both the clauses above set out is one that follows only after judgment of conviction. As we construe the application, there was nothing in it but what a duly authorized agent might have waived without in any manner violating the by-laws in any essential particular. After the application has been presented to a subordinate council, duly recommended by two members in good standing, the by-laws further protect the society by requiring it to be referred to an investigating committee, and the applicant must submit to a medical examination; and, if he be favorably recommended, the council shall then ballot on his admission, and, if more than one black ball should appear, the candidate shall be rejected.

As the agents did not attempt to waive any of the provisions of the by-laws which relate to the substance of the contract the reply was good. Again, the jury, in response to interrogatories propounded to it by appellant, found that Boyle did not represent that he was between 36 and 37 years of age at the time the application was made. As the jury found against the truth of appellant's third paragraph of answer, it is wholly immaterial whether the reply is good or bad. If it were bad, no reversible error could be predicated upon this ruling.

This conclusion also disposes of several questions made on the ruling on the motion for a new trial.

One of the causes for a new trial is that the verdict is not sustained by sufficient evidence. The evidence relative to the death of William Boyle discloses substantially these facts: At about 4:30 o'clock on the afternoon of the 11th day of July, 1891, Mr. Boyle arrived at his home, in South Chicago, from his work in Whiting, Indiana, and stated to his wife that he intended to go bathing in Lake Michigan that evening. He requested his son-in-law, who resided in the same house, to accompany him. His son-in-law declined to go, giving as a reason that he was too tired. After supper his wife, the appellee, procured a towel and soap for him. He also asked another person to go with him, but that person also declined. He took the towel and soap from his wife, and placed the towel in his coat pocket, and started for the lake, which was about a mile distant. His wife accompanied him about two blocks. Just before they parted, he, in an affectionate manner, requested her not to be uneasy, as he would return shortly.

This was the last ever seen or heard of William Boyle alive. His wife waited for his return until ten or eleven o'clock of the same evening, when she became alarmed at his absence, and waked up the son-in-law, and sent him to look for her husband. The son-in-law started for the lake, and on his way stopped at the police station, and, procuring the assistance of an officer and two strangers, they proceeded to the lake, and after a search of the shore, at a point where Boyle had entered the water on former occasions, they found the wearing apparel he had on when he left home, lying on a stump about fourteen feet from the water's edge, including the towel in the coat pocket, where it had been placed before starting to the lake, together with his knife and pocket-

book, with all the money he had when he left home. There were bare foot prints leading from the wearing apparel to the water's edge. The evidence also shows the dangerous condition of the lake at this point; the uneven and sandy bottom, constantly shifting, strong currents, and places where the water was from ten to twenty-five feet deep. A continued search was kept up for near two months, and several bodies taken from the lake were examined for the purpose of identifying Boyle's body, but such bodies were generally so decomposed as to defy identification. There was no reason or cause shown to induce Boyle to abandon his wife and family, as his relations with them had always been pleasant. No witness testified to seeing Boyle enter the waters of the lake or to seeing him drown.

The essential fact necessary to be proved by the appellee in order to support a recovery is the death of her husband, William Boyle. There was no direct evidence of this fact. The fact of death, like many other facts, may be established by circumstantial evidence. It may be determined by a process of reasoning, by presumptions and inferences drawn from facts established by the direct evidence. Appellant's learned counsel concede this principle, but insist that it has no application to the facts of this case because of another familiar rule, that an inference can not be drawn from an inference. In other words, that when one fact has been ascertained by the aid of presumptions and inferences, such fact can not be used as a basis from which to infer or conclude the existence of another fact. It not infrequently happens, in the administration of justice, that there is no direct evidence of the *factum probandum*, and it becomes necessary to resort to inferences to determine it. It has been found to be a wise and safe rule to require the circumstantial evidence to come so close to the fact to be

proved that it must be the immediate and direct infer-
ence therefrom.    Any other rule would result in great
uncertainty.    If the ultimate fact should be drawn from
intervening inferential facts, the probabilities of its cor-
rectness would be much weakened.    It would be a prob-
ability based upon a probability.    The law will not toler-
ate such uncertainty.    In support of their position ap-
pellant's counsel say:

"Appellee attempted to show that her husband died
by drowning in Lake Michigan.    If he was in the lake
at all, it is only an inference from circumstances that he
was drowned, because no one saw him drown, and it can
only be inferred that he did drown from the fact that he
might have drowned.    But the prerequisite circum-
stance from which we infer he was drowned, namely,
that he was in the water at all, itself rests upon mere
inference.    Before he could drown he must have been
in a situation to drown.    No one saw him in the water,
nor has any one personal knowledge that he was there.
To say that he was there, is a mere inference.    Upon
this inference must rest the inference that he was
drowned.    It would have been absurd to show that Boyle
might have drowned at the place he is supposed to have
entered the lake, without showing that he actually en-
tered the lake at this place.    The chances may be that
Boyle is dead, but the law does not deal in chance.    To
meet such cases as this, the Legislature has provided
that the death of a person will be presumed after an un-
explained obsence of five years; and, in this instance,
we believe that it will be safer and more just to all par-
ties to follow the statute than to establish a precedent
that may open the door for fraud and imposition."

The appellee was not bound to establish the death of
her husband by drowning in the waters of Lake Mich-

igan. The rule with reference to a party being bound by the theory of his pleading has no application to the evidence. If we strip the case of all the circumstances relating to bathing in the lake, there is still enough left to warrant the jury in presuming the death of appellee's husband. *Tisdale* v. *Connecticut, etc., Ins. Co.*, 26 Iowa, 170; *Tisdale* v. *Connecticut, etc., Ins. Co.*, 28 Iowa, 12; *John Hancock, etc., Ins. Co.* v. *Moore*, 34 Mich. 42.

The fact that William Boyle went to the lake to bathe, the finding of his wearing apparel near by, the footprints in the sand leading to the water, the dangerous condition of the bottom at that point, are so many additional circumstances which lend support to the inference of his death. The appellee was not required to prove the death of her husband by drowning. If she established the fact of his death in any manner, this is all that is required of her. The circumstances last enumerated not only tend to prove the death, but they tend to prove death by drowning, and the jury might legitimately infer death by drowning.

One of the causes assigned for a new trial is that the court erred in overruling appellant's motion to suppress portions of the deposition of one of appellee's witnesses. This witness was asked to state what he knew of the drowning of one Marcus Henson, and he answered that he saw Henson in the water and tried to save him, but failed; and that his body was never recovered. It was proper to show that the place where Boyle went to bathe was a dangerous place, and this might be made to appear by showing that other persons were drowned there, or near there. In this respect this evidence was slightly relevant.

The last cause for a new trial is that the court erred in giving instructions numbered 2, 3, 4, 5, 6, 7, 8, 12,

13, 15. This is a joint assignment, and if any one of them is good the assignment fails. Some of them were unquestionably good.

We find no reversible error in the record.

Judgment affirmed at the costs of appellant.

Filed June 20, 1894.