CONTINENTAL LIFE INS. CO. v. SEARING.

EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. SAME.

(Circuit Court of Appeals, Third Circuit. March 9, 1917.)

Nos. 2129, 2130.

1. INSURANCE ☞668(14)—LIFE INSURANCE—ACTIONS—PROOFS OF LOSS—SUFFICIENCY—QUESTION FOR COURT.

Where life policies required proofs of death as a condition precedent to recovery, the question of the sufficiency of the proofs is for the court alone, and if sufficient the case then should be submitted to the jury, and if insufficient there is no basis for action.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1747, 1749, 1750, 1766, 1768.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. INSURANCE ☞659(1)—LIFE INSURANCE—ACTIONS—EVIDENCE.

In an action on a life policy, where insured's death was denied, the admission in evidence generally of proofs of death is reversible error; the proofs being self-serving declarations as to the matter in controversy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1691, 1693.]

3. INSURANCE ☞665(5)—LIFE INSURANCE—ACTIONS—EVIDENCE—SUFFICIENCY.

In actions on life policies, evidence *held* to warrant findings that insured was dead, having met his death through accidental drowning.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1719, 1721, 1722.]

4. DEATH ☞1—PRESUMPTIONS—EFFECT OF.

Though there is, until the expiration of seven years, a presumption of continuity of life, in case of disappearance such presumption may be overcome by the circumstances surrounding the disappearance.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3.]

5. EVIDENCE ☞141—SIMILAR FACTS—OTHER INJURIES.

In action on a life policy, where recovery was sought for the death of insured, who, having entered the surf in the early evening, disappeared in a short space of time, evidence of other disappearances at the same beach was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 406, 408–413.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. W. Thompson, Judge.

Actions by Nancie M. Searing against the Continental Life Insurance Company and against the Equitable Life Assurance Society of the United States. There were judgments for plaintiff, and defendants bring error. Reversed and remanded.

Ruby R. Vale, of Philadelphia, Pa., and William F. Kurtz, of Wilmington, Del., for plaintiff in error Continental Life Ins. Co.

George Douglas Hay, B. Gordon Bromley, and Thomas De Witt Cuyler, all of Philadelphia, Pa., for plaintiff in error Equitable Life Assur. Soc. of United States.

Wm. W. Porter and Sidney E. Smith, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Mrs. Nancie M. Searing, a citizen of Pennsylvania, brought suit against each of the defendant insurance companies, corporate citizens of other states, to recover on a policy on the life of her husband. On trial by the court below she recovered verdicts, and on entry of judgment thereon each company sued out a writ of error.

As the alleged errors are the same in both cases, we dispose of both in this opinion. The questions here involved are: First, whether the court erred in refusing the companies' request for binding instructions; and, secondly, whether, if the case was one for a jury, the court erred

in the admission of certain testimony and in certain language used in its charge.

Turning to the first and underlying question, we are of opinion that under the evidence the issue here involved was one which fell within the province of a jury, and not the court, to determine. Turning to such evidence, we find, for example, that on November 10, 1914, the defendant the Continental Life Insurance Company executed and delivered its policy here sued on, whereby it covenanted to insure the life of Frederick Roe Searing and "to pay at its home office $5,000 immediately on receipt of due proof of the death of the insured, Frederick Roe Searing, of Philadelphia, Pa., while this policy is in force to the beneficiary, Nancie M. Searing, wife of the insured," etc. The allegations of the plaintiff, the beneficiary, were that her husband died on August 17, 1915, at Atlantic City; that due proofs of his death were furnished the company; that thereby a right of action had accrued to her. The defendant denied the insured's death, and also the furnishing of due proofs of death by the beneficiary. Much of the confusion in this case arises from the course pursued in the trial, and, as there must be a retrial, we indicate the course to which the plaintiff's case should be directed on a retrial.

[1] The policy provides the beneficiary furnish due proofs of death of the insured as a condition precedent to a right of action. When, therefore, proofs of death are offered in evidence, they are received by the court to enable it to determine whether the condition precedent to suit had been met. The jury have nothing to do with that question or with the contents of such proofs. The preparatory question of the sufficiency of the proofs should be so disposed of by the court itself that the contents of the proofs are not disclosed to the jury. If the court is satisfied the proofs fulfill the requirements of the policy, it is its duty to allow the case to proceed, and thereafter the jury's province begins to consider such pertinent evidence as may thereafter be produced. If the court is of opinion the proofs offered are not in due form and substance, the court so holds, and there is no issue for the jury to try. It will thus be seen that in the ordinary case the proofs are for the consideration of the court alone, and having satisfied their purpose, namely, the fulfillment of a step precedent to the right of action, they have served their purpose, and for jury purposes they disappear from the case.

[2] They are in their nature ex parte, self-serving statements, and to permit their ex parte statements to influence a jury is so clearly at variance with the principles of evidence that a court cannot too carefully in the trial of insurance cases keep wholly to itself, and keep wholly from a jury, proofs of loss. The danger of departure from this safe course is well evidenced by the record in this case, where, for example, letters of plaintiffs' counsel, which summed up the plaintiff's case and argued it in detail, were considered by the jury. So, also, affidavits of other persons, which accompanied the proofs of death, matters proper enough in themselves for the information of the company, were read to the jury, when all such matters were for the consideration of the court alone. Of course, cases may arise where

a court might have to submit to a jury some issue connected with the proofs of death, and therefore the proofs themselves would be received and considered; but it suffices to say the present was not such a case. Under the course this trial took we think it clear that substantial harm was done to the defendants' case by permitting proofs and the accompanying documents which were solely for the consideration of the court, to be also given to the jury. We cannot close our eyes to the fact that they were meant to influence, and naturally would influence, the jury in its verdict.

[3] Turning to the evidence proper for the jury, we find it tended to show that the deceased was last seen by any one as he entered the surf at Atlantic City on the evening of August 17, 1915. The contention of the plaintiff is that there were such circumstances of imminent peril incident to his subsequent disappearance as warranted submission of the question of his death to the jury. In the first place, the evidence tended to show an absence of any reason for his absconding; that he was engaged in active business in Philadelphia, and while he had financial anxieties, he was not pressed or embarrassed; that he was carrying on his business and seeking additional business in such a way as to lead to the belief that he was anxious to continue it; that he was in a bathing suit when last seen, and that he entered the water with the expectation of having a companion, who was with him, join him as soon as he could get a bathing suit; that on the return very shortly of that companion he had thus suddenly disappeared, without, so far as the proofs go, having access to any street clothes; that further proofs tended to show that, during the spring preceding his disappearance, Searing, on account of his wife's illness, had taken an apartment at Atlantic City, where his wife stayed with her mother, and where he went himself from time to time; that on the afternoon of his disappearance he left Philadelphia in an automobile in company with one Miller, and started for Atlantic City, the arrangement being that Miller should return to Philadelphia by rail the next morning, while Searing brought his wife back by the auto to see her physician in Philadelphia; that en route down he telephoned his wife they were coming, and asked her to delay dinner so as to enable him to take a surf bath. There was also proof tending to show that Searing had at one time had an accident which left the muscles of his foot so bound that overexertion tended to cramp his lower limbs; that shortly before his disappearance he had been examined by a physician and disclosed high blood pressure, indicating heart deterioration; that during that day he had complained of abdominal cramp.

Searing's auto broke down shortly before reaching Atlantic City. Some time was spent in a fruitless effort to repair it, and both he and Miller were picked up by a passing automobile and taken within a couple of blocks of Searing's apartment. From there the men hurried to that apartment and up three flights, where Searing put on a bathing suit and, leaving his clothes, started for the beach. While at the house Searing complained of being warm and tired. On leaving the apartment about 7 o'clock, the two men stopped at a bar, where they took a drink, and where it appeared that Searing had no money

with him, and Miller, who was in his street clothes, had to pay for such drinks. Searing then proceeded to the shore, while Miller started to hire a bathing suit, agreeing to meet him later. The last seen of Searing by Miller, the former was just entering the surf. The proofs showed that the temperature of the water on that day and the preceding was below normal, and lower than on any day that month before or after. Under the then existing conditions of current and tides, it was shown a body could be washed under the débris of an old pier, and if caught there was not likely to be recovered, but would be destroyed by crabs and fishes. The surf guards had left for the day. On Miller's return, in about 20 minutes, Searing had disappeared. An alarm was given, the police notified, but he was not seen again.

In view of these proofs, was the court bound to withdraw the case from the jury, and to hold as a matter of law that no inference could be drawn from these proofs that the insured was dead? We have not referred to the evidence produced by the defendant, to the contradictions of all the plaintiff's, and in view of the case going back for a retrial we refrain from any such discussion at all of it, or of the plaintiff's proofs in detail. For present purposes it suffices to say that an examination of all the proofs satisfied us that the court below would have been in error had it withdrawn the case from the jury.

[4] The law has said that after the lapse of seven years a presumption of death arises, but unless seven years have passed there is a presumption of life. This presumption of life can be met and overcome by proof of circumstances of specific peril to which the person disappearing was subjected, and we think there was evidence in this case which, if believed, tended to show such peril. Each case of disappearance has its own individual facts, and affords no controlling precedent for a case of disappearance under different facts. In support, however, of our conclusion that there existed in the present case proofs from which the presence of a specific peril could be found, to which Searing was subjected, we may refer to Fidelity v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922, and to avoid misapprehension we may say that the presence of such specific peril to Searing in this case makes our holding no departure in any respect from those firmly established Pennsylvania cases (Burr v. Sim, 4 Whart. [Pa.] 150, 33 Am. Dec. 50; Bradley v. Bradley, 4 Whart. [Pa.] 173; Whiteside's Appeal, 23 Pa. 114; Esterly's Appeal, 109 Pa. 222; Welch's Appeal, 126 Pa. 297, 17 Atl. 623; Mutual Benefit's Petition, 174 Pa. 1, 34 Atl. 283, 52 Am. St. Rep. 814), which in substance hold that mere disappearance for less than seven years creates no presumption of death when not accompanied by subjection to any special peril.

[5] Another matter remains to be noticed. Evidence was submitted of the disappearance of other persons at Atlantic City. This we think constituted error. Without here discussing each of these cases, and showing how they tended to becloud the issue in this case, we may say that every unexplained disappearance case is of necessity different in some particulars from all others, and none of those so testified to in this case involved any such general, or indeed special,

240 F.—42

identity with the present case, as in any way threw any pertinent evidential light on the present issue. Their recital to the jury was, in our judgment, so misleading and prejudicial to the defendants' case that, if for no other reason, the judgment below should be reversed, and the cause remanded[1] for further procedure.