## STATE LIFE INS. CO. v. SULLIVAN.
### No. 6605.

Circuit Court of Appeals, Ninth Circuit.
May 16, 1932.

Raymond Perry, of San Francisco, Cal., for appellant.

Sullivan, Roche, Johnson & Barry, of San Francisco, Cal., for appellee.

Before WILBUR, Circuit Judge, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

This is an action brought against appellant insurance company by Adelaide F. Sullivan, the beneficiary in two policies of life insurance for $5,000 each issued by the defendant in 1918 upon the life of her husband, Eugene J. Sullivan. The jury rendered a verdict in favor of the plaintiff for $10,000, and judgment followed, from which the insurance company appealed.

The principal question involved in the case is whether or not sufficient proof of death was offered by the appellee to support the finding of the jury to that effect. The appellee relies upon evidence of the disappearance of the insured on July 23, 1929, and supplementary circumstantial evidence which appellee claims was sufficient to establish death prior to the institution of the action and to the expiration of the seven-year period necessary to raise the legal presumption of death.

At the time of his disappearance, the insured had been of unsound mind for about nine years, since 1920. He was suffering from a manic depression type of insanity with hallucinations of persecution and inability to co-ordinate himself to his environment. He had once jumped into the San Francisco Bay in an attempt to commit suicide in 1920, and had subsequently and frequently threatened to take his life by drowning himself in the San Francisco Bay; he had attempted to cut his throat; he had for some time been under almost constant surveillance to prevent suicide or disappearance; at the time of his final disappearance on July 23, 1929, he was without funds other than the sum of 35 cents, barely enough to get him on board a ferryboat; he was becoming weak and emaciated, for he refused food because he believed he was being poisoned; he weighed only 90 pounds, although five feet seven inches in height; his physical condition was such that in the opinion of his family physician, who testified in the case, even if he had not disappeared, he would not have lived more than 6 months; he was not physically or mentally able to work, and had not done so for some time. At the time of his disappearance the insured was 63 years of age. He had been married for over 40 years to the appellee. They had eight living children of ages ranging from 21 to 40 years, two of whom were living with their parents at the time of the disappearance of the insured, and four others living in San Francisco. The insured and his wife had lived for more than 40 years in San Francisco and had many friends and acquaintances therein. He had been actively engaged as a real estate broker for many years prior to his sudden illness in July, 1920, at which time he experienced business and financial troubles, and became suddenly insane with hallucinations of persecution, and on July 12, 1920, made his first attempt at suicide by jumping into the San Francisco Bay. From June to December, 1920, appellee always accompanied the insured when he left the house to go to various places in San Francisco and across the Bay. While on the ferryboat he always wanted to ride on the lower deck, and would go to the side and try to jump into the water and would have succeeded if he had not been restrained. He was committed to the State Hospital for the Insane at Agnews on December 21, 1920, after an attempt to commit suicide by cutting his throat. The attempt was unsuccessful because of the in-

tervention of his daughter. He was paroled on June 8, 1921. He had periods of improvement and other periods of melancholia. For 6 or 7 years he was able to go around San Francisco and other places unaccompanied. In March, 1929, his condition became such that his physician advised that he be again committed to an asylum. Beginning in May, 1929, because of his condition, the family did not permit him to go out alone. His health was very poor, he refused to eat, could not sleep, was frightened and terror stricken, had hallucinations of being pursued or persecuted by imaginary persons. These delusions continued to the day of his disappearance. For 4 weeks prior to his disappearance, nearly every day he would say something about ending his life. During that time he was not left alone day or night. The day before he disappeared he proposed to his wife that they commit suicide together, claiming that neither had anything left to live for. He did not sleep at all the night of July 22d, and his wife was up with him nearly all night. On the morning of his disappearance the insured went up to the attic on the third floor, dropped his hat from the window, saying he wanted to see how straight it would fall. He walked up and downstairs repeatedly all that day before he left the house. He took 35 cents, saying he was going to take a walk. Appellee asked him to wait until she would change her dress, saying she would go with him. He replied, "I can go around the block alone," and went downstairs. When he reached the sidewalk, he said, "I am going down to the foot of Van Ness Avenue." This was on the edge of the Bay and near the Golden Gate ferryboats leaving from that point for Sausalito and Berkeley. The appellee rushed upstairs to get a coat and immediately followed him. She could not overtake him, although she saw him going toward Van Ness avenue. She at once returned to the house and telephoned the Golden Gate Ferries and the Southern Pacific Company to take charge of him if he were located. He was never seen alive again, although intensive search was at once initiated and continued. The members of the family were notified, as well as the Police Department of San Francisco. His disappearance was noted in the newspapers; the family did everything possible to locate the insured, writing and telephoning numerous persons at many places, visiting every institution in the Bay counties, Sacramento and Yolo counties, going to various other places where it was thought he might have been. The San Francisco police boats made trips about the Bay

for the purpose of looking for him. The appellee communicated with various officials around San Francisco Bay and officials in other parts of the state as far south as Los Angeles. The acquaintances of Mr. Sullivan were interviewed by members of the family, but no one who knew him had ever seen him after his disappearance, so far as could be ascertained.

To determine whether these facts are sufficient to support the verdict, it should not be overlooked that the expert testimony of the physician of the insured, if believed, established the fact that he could not have survived more than 6 months with the best of care and supervision, and it is manifest that without such supervision, without money, and out of any contact with relatives or friends, entirely aside from his avowed intention of committing suicide at the first opportunity, the chances that he would survive for 6 months were greatly reduced. In fact, the only theory upon which it could be supposed that he had survived longer than that would be that he had come into the custody of some public institution for the care of the insane, and in such case the authorities would endeavor to ascertain his family connections (Pol. Code § 2171), and his mental condition being such that he was able to give the information when required. Upon this theory, appellee communicated with such institutions, but was unable to locate her husband. The evidence was ample to justify the jury's conclusion that the insured was dead.

■ The appellant contends, however, that the presumption that a person lives 7 years after his disappearance cannot be overcome without some evidence that the person encountered some specific peril or within that period came within the range of some impending or immediate danger which might reasonably be expected to destroy life, eiting Davie v. Briggs, 97 U. S. 634, 24 L. Ed. 1086. We think that, when a person suffering from suicidal mania is left alone, that fact amply establishes a specific peril within the meaning of the rule. Appellant relies strongly upon the case of English v. U. S., 25 F.(2d) 335, by the District Court of the District of Maryland. In that case Judge Soper was called upon to decide an entirely different question, although the circumstances were somewhat analogous to the case at bar. A veteran whose war risk insurance terminated July 1, 1919, disappeared April 28, 1919. An action was brought upon the war risk insurance policy by his stepmother to recover $10,000. Apparently in the first

count it was alleged that the insured was dead, but in the second count, instead of alleging his death, the plaintiff alleged the circumstances of his disappearance and the evidence tending to indicate that he had committed suicide. The action was brought after the expiration of 7 years and after the presumption of death had arisen. The court sustained the demurrer to the second count of the complaint, and properly so, because the inference of death before July 1, 1919, did not arise as a matter of law from the circumstances set out in the complaint. If they had alleged death before July 1, 1919, and sought to establish it by circumstantial evidence, and the court had been asked to direct a verdict in favor of the defendant, the case would be similar to the case at bar, aside from the fact that in the case of English v. United States, the parties waited until the expiration of the statutory period before bringing the action.

Appellant predicates error upon the ruling of the trial court permitting plaintiff to amend his complaint to conform to the proof. The allowance of such an amendment is purely a matter of discretion. There is nothing in the point.

Appellant objects to two paragraphs of the charge given by the court to the jury. These exceptions do not state the ground of the objection, and are clearly insufficient to justify our consideration. The charge to the jury, according to the bill of exceptions, was frequently interrupted by the expressions "Exception noted, exception No. 16," and so on to and including Exception No. 24. These exceptions are insufficient to raise any proposition of law for the consideration of this court.

Appellant's brief lists a number of other alleged errors. They are not properly assigned as errors, and are not seriously discussed in the briefs, and are without merit.

Judgment affirmed.