### HEROLD v. PRUDENTIAL INS. CO. OF AMERICA.

#### No. 19012.

District Court, E. D. Pennsylvania.

Sept. 21, 1937.

Wilhelm F. Knauer and J. Kennard Weaver, both of Philadelphia, Pa., for plaintiff.

Frederick J. Shoyer, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit upon a policy of life insurance in the amount of $5,000, having a provision for double indemnity in case of death by accident. The jury returned a verdict for double the face of the policy, with interest. The defendant has moved for a new trial.

The principal ground of the motion is that the evidence was insufficient to support a verdict, either of the insured's accidental death or of his death at all.

In Continental Life Insurance Co. v. Searing, 3 Cir., 240 F. 653, 657, the Circuit Court of Appeals for this Circuit stated the rule governing disappearance cases, clearly and concisely, and there should be no difficulty about its application. The court said, "The law has said that after the lapse of seven years a presumption of death arises, but unless seven years have passed there is a presumption of life. This presumption of life can be met and overcome by proof of circumstances of specific peril to which the person disappearing was subjected. * * * Each case of disappearance has its own individual facts, and affords no controlling precedent for a case of disappearance under different facts."

In the present case there was evidence, which, if believed, indisputably placed the insured when last seen in a position of specific peril.

He was bathing in the ocean from a beach at Atlantic City, N. J. It was a "protected" beach, in that two lifeguards were continuously on duty, watching the bathers from an elevated platform. There was a large number of people (200 or 300) bathing at the same time and place.

The last person to see the insured was his daughter. She had been swimming with him in the sea. She left him and walked in toward the shore with the young man to whom she was engaged. As they were walking in, she turned and "watched him until he got beyond the breakers." In placing him beyond the breakers, she was substantially corroborated by the young man, who said that he was swimming outward and was 100 to 125 yards from the shore line.

The weather was partly cloudy and there was a strong southeast breeze blowing diagonally inshore. One of the lifeguards said, "It was a typical southeast sea, which is very, very choppy. By that I mean a lot of white caps coming in very, very rapid succession." This witness, called by the defendant, testified very specifically as to the danger in swimming beyond the breakers. He said that he did not believe that it would have been physically possible for the average person to get out there at all, because of the excessive choppiness of the sea—the rapid succession in which the waves were coming in. He added that, although he considered himself an exceptionally good swimmer, he would have had difficulty. The danger, he said, "consisted in being physically worn out on account of having to battle a series, a continuous series of waves breaking in your face * * * unless a person has experience of expelling water as rapidly as he gets it in his face, he is going to be forced to turn around for the shore."

It further appears in evidence that, although the insured was a good swimmer,

**426**

this was the first time that he had been swimming since the preceding summer and that he had gained some 40 pounds in weight during the past year. Of course, the evidence of these lifeguards was introduced by the defendant to show that the insured was not beyond the breakers and could not have been there, as his daughter testified, but the jury were entitled to accept their testimony as to the dangerous character of the sea without being bound to accept their opinion that it was impossible for the insured to have swum out beyond the breakers.

The evidence quoted fully justifies a finding that the insured when last seen was under circumstances of specific peril, and it supports a finding of his death.

 There was no evidence that the insured was not in good health, and nothing to show that his death was due to a heart attack or some other disease. Consequently, in view of the presumption against a change in his physical condition, the finding of accidental death was also justified.

There was some evidence of financial difficulties and some slight suggestion of domestic disharmony which might point to a motive for either suicide or voluntary disappearance. It was all submitted to the jury. The amount of the insurance was comparatively small, and the evidence of motive was by no means compelling.

 Certain other matters have been urged in support of the motion for a new trial. One of them was that the court excluded the defendant's offer to prove by one of the lifeguards that there were rules "that control so far as the enforcement of the law goes as to any men outside of the breakers swimming." The only purpose for which this could have been relevant was to show that the lifeguards were more than ordinarily attentive in watching to see whether anybody ventured beyond the breakers and thus add weight to their testimony that no one had. However, immediately after excluding the testimony as to the rules, the court gave the defendant the full benefit of whatever effect their admission would have had in this respect by asking the guard whether there was any particular reason why he looked for people outside of the breakers, and permitting him to answer that there was and to explain as fully as he desired.

The motion for new trial is denied, and judgment may be entered for the plaintiff upon the verdict.