## OCCIDENTAL LIFE INS. CO. v. THOMAS.
### No. 9148.

Circuit Court of Appeals, Ninth Circuit.

Nov. 30, 1939.

---

C. H. Potts, of Coeur d'Alene, Idaho, and Hamblen, Gilbert & Brooke, of Spokane, Wash., for appellant.

Virgil Peringer, of Bellingham, Wash., and Wm. S. Hawkins, of Coeur d'Alene, Idaho, for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee was beneficiary in a policy of insurance written by appellant on the life of her husband, Ralph L. Thomas. The principal sum named was $2500, with a provision for the payment of double indemnity in the event of death by accident. Appellee sued on the policy, alleging that the insured was accidentally drowned October 5, 1937, while fishing on Hayden Lake in Idaho. The suit was filed less than a year after that date. A trial to the court resulted in judgment for appellee in the sum of $5000.

This case belongs in the numerous class commonly referred to as "disappearance" cases. There being no direct evidence, either of death or of the manner in which it occurred, appellant urges that there can be no recovery short of the seven-year period of unexplained absence, after which death is presumed; and that, in any event, judgment on the double indemnity provision of the policy is not sustainable because there is no proof that death, if it occurred, was effected by external, violent and accidental means as stipulated in the policy. Appellee contends that the findings, both of death and of its accidental nature, are supported by the proven facts and circumstances.

There is no conflict in the evidence. The insured was thirty-seven years of age, a man of exemplary habits and of upright character. For sixteen years he had been a minister of the Methodist Church, and had served in that capacity for four years at Coeur d'Alene, Idaho. He was possessed of a sunny disposition, had many friends, was happily married, and had three children to whom he was devoted. In a professional way he was successful, and was busy not only in his ministerial duties but in other matters, taking an active part in civic, fraternal and patriotic affairs. He had met with no adversities and there was admittedly no showing of any motive for suicide or intentional disappearance. He was in good health, physically strong and mentally alert. He was not, however, a good swimmer.

On the afternoon of the day in question he participated in a radio broadcast, and about three o'clock stated his intention of calling on some of his parishioners near Hayden Lake, and of going fishing thereafter—a sport in which he frequently indulged. After making his calls, he went to Snyder's Dock on the west shore of the lake and rented a small rowboat, again stating his purpose of fishing on the lake. He took off his coat, donned a mackinaw, put on heavy shoes, and set out in the boat. This was about 5:30 P.M. When last seen, about dusk, he was rowing and trolling some three-eighths of a mile east of the dock and about one hundred yards south of a place called Bervin's Point. A light breeze was then blowing across the lake, and later, during the night, some wind came up. It is not unusual for people to fish on this lake until as late as nine or ten at night.

The next morning, upon insured's failure to return, a search was commenced.

His boat was found about one hundred yards from the shore and approximately three-quarters of a mile from the locality in which insured had last been seen. The trolling line, which had been run out to the extent of about fifty feet, had become entangled in a wire on the bottom of the lake, thus anchoring the boat at the spot to which it appears to have drifted before the prevailing wind. The insured's overcoat was hanging over the side, partially in the water. There was but one oar and it was trailing outside the boat. The missing oar was latei found where it had drifted against the shore.

It had been the insured's intention, as stated to Snyder, to do some fly fishing. No rod was found in the boat, but there was a tackle box and a cover for a rod of some kind lying in the bottom. Snyder testified that Thomas had something in a khaki bag which he took to be a steel rod. The boat was of steel, was comparatively small, rode high on the water, tipped easily to a certain point, and when found had about half an inch of water in the bottom.

The lake, which is about six miles long and in places a mile wide, is very deep and the water is extremely cold. An extensive search was conducted along the shores, but no evidence was found of the insured's having left the lake. The water was dragged with lines extending three hundred feet in depth, with grappling hooks attached, yet in many places the lines did not reach the bottom. The search continued for two weeks without result.

■ Two settled principles applicable to a case of this nature are:—that a person who was alive when last seen is presumed to continue living until the contrary is shown; and that one who disappears and remains unheard of for seven years, and whose absence is unexplained, is presumed to be dead. Where the proof shows that the absentee encountered some specific peril to which it may reasonably be thought he had succumbed, death may be inferred short of the expiration of the seven-year period. Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922; State Life Ins. Co. v. Sullivan, 9 Cir., 58 F.2d 741; Brownlee v. Mutual Benefit Health & Acc. Ass'n, 9 Cir., 29 F.2d 71; Continental L. Ins. Co. v. Searing, 3 Cir., 240 F. 653; Herold v. Prudential Ins. Co. of America, D.C., E.D. Pa., 23 F.Supp. 424, affirmed per curiam, 3 Cir., 96 F.2d 996; Supreme Council, C.B.L. v. Boyle, 10 Ind.

App. 301, 37 N.E. 1105; 34 A.L.R. 1394; 61 A.L.R. 1330. In a number of cases, where the proof was of such character as to indicate the unlikelihood of a voluntary disappearance, the fact of death within the period has been thought to be sufficiently established without a showing that the absentee encountered a specific peril. Tisdale v. Connecticut Mut. L. Ins. Co., 26 Iowa 170, 96 Am.Dec. 136; Lesser v. New York L. Ins. Co., 53 Cal.App. 236, 200 P. 22. For other cases to the same effect, see 34 A.L.R. 1390; 61 A.L.R. 1329.

■ The parties assume, and we will do likewise, that the case is governed by the law of Idaho. The only pertinent Idaho decision to which attention has been called is Gaffney v. Royal Neighbors of America, 31 Idaho 549, 174 P. 1014. In that case, suit on the policy was not brought until after the lapse of seven years from the date of the insured's disappearance. The jury found, in answer to a special interrogatory, that she had met her death on the night she disappeared. It was contended by the insurance company that the cause was barred by the state statute providing a five-year limitation in a suit upon a contract or liability founded upon an instrument in writing. The contention was denied by the court in an opinion written by the late Judge Rice. The case is authority for nothing more than the proposition that, while facts and circumstances shown in evidence may be sufficient to warrant a finding as to the date when death occurred, the statute of limitations will not be set in motion until the presumption of death becomes conclusive through the lapse of the seven-year period. The court did not concern itself with the question whether, in the absence of the presumption of death, the evidence would have been sufficient to establish the fact of death. Compare Howard v. Equitable Life Ass. Soc., 197 Wash. 230, 85 P.2d 253, 119 A.L.R. 1302.

■ The trial court's findings are not to be disturbed on appeal unless they are clearly erroneous. Rule 52 (a), Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c. We are satisfied that the proof is sufficient to support the finding that the insured is dead. Appellant argues that he was not shown to have been exposed to any specific peril which might fairly be thought to have resulted in his destruction—that he was not in peril merely because, when last seen, he was fishing from a rowboat on a sizeable lake, there

being no evidence of a storm. The proof, however, goes much farther than this.

The insured was in the boat at dusk, and he was not in it the next morning. There is evidence that he did not land from it, and no evidence to the contrary. The record tends strongly to eliminate the hypothesis either of voluntary disappearance or of self-destruction. Aside from all this, one who knew nothing of Thomas or of his disappearance, coming by chance upon this boat on the morning of October 6, 1937, could not but have been struck by the mute indications of a tragedy. Such observer might well have concluded that the occupant of the boat, whoever he was, had fallen overboard, perhaps while casting or while attempting to reel in a fish. When all the facts are put together, they point with at least fair probability to the insured's having perished in the lake. Compare Fidelity Mutual Life Ass'n v. Mettler, supra; Supreme Council v. Boyle, supra.

It is, of course, possible that Thomas died from natural causes, as from a heart attack, and fell into the water, in which event the double indemnity provided by the policy would not be payable. But his age and known condition of health were such as to render that inference improbable. It is not necessary that the proof go so far as to preclude all possible inferences except that of accidental drowning. Adams v. Bunker Hill & Sullivan Min. Co., 12 Idaho 637, 89 P. 624, 11 L.R.A.,N.S., 844; Newman v. Great Shoshone & Twin Falls Water P. Co., 28 Idaho 764, 156 P. 111; Watkins v. Federal L. Ins. Co., 54 Idaho 174, 29 P.2d 1007; Brownlee v. Mutual Benefit Health & Acc. Ass'n, supra. Thomas may be still alive, or if dead, it may be that he died from other than accidental causes; but the facts essential to a recovery need not be established to a moral certainty or beyond a reasonable doubt. This is a situation where, as was said by us in the Brownlee case, supra, the same evidence not only supports the inference of death, but also points to the cause of it.

Affirmed.

HANEY, Circuit Judge (concurring in the result).

I believe that the conclusion of the majority is reached by weighing the evidence, and doubt that we have any such power. I think it was for the trial court to determine whether the weight of the evidence was for appellee, for appellant, or whether the evidence gave equal support to each of two inconsistent inferences within the rule announced in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819. Questions as to the weight of the evidence are not to be decided by us. The only question before us is whether or not the finding of the trial court is clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a). I think such finding is clearly erroneous only if no reasonable man could logically infer accidental death from the evidence. I believe it is apparent that reasonable men would differ in making inferences from the evidence before us, and therefore the finding is not clearly erroneous. For these reasons I think the judgment should be affirmed.