## REINOLD v. UNITED STATES.

District Court, S. D. New York.
Dec. 16, 1946.

Frederick R. Graves, of New York City for libellant.

John F. X. McGohey, U. S. Atty., of New York City (Thomas H. Walker, of New York City, of counsel), for respondent.

HULBERT, District Judge.

Libellant is the beneficiary under a Crew Life and Injury policy of insurance issued by the War Shipping Administration covering the master, officers and crew of the M/V Baltic, which Ernest F. Backus joined at New York in January, 1942, as Chief Officer.

The vessel was at that time under Panamanian regristry, operated by the Panama Transport Company under a time charter to the War Shipping Administration.

When the vessel left New York, it was equipped with guns and small arms manned by a crew of merchantmen. The vessel put into Miami, Fla., in February where it remained until the middle of March, when the U. S. Navy placed a gun crew known as an Armed Guard on the vessel in charge of a commissioned officer (Ensign) of the U. S. Naval Forces, in defense against attack by enemy submarines. After making stops at various ports, the Baltic put into La Libertad Ecuador, where a cargo of crude oil was taken aboard to be delivered to a consignee in Montevideo, Uruguay, where the Baltic arrived in late June of 1942.

On the evening of June 29th, the master of the Baltic was ashore, as were the Commander of the Armed Guard and some of the Armed Guard crew. A member of the Armed Guard, one Samuel A. Rosborough, a second class seaman was on gangway watch aboard the Baltic. He was relieved by one Platt, another member of the gun crew and proceeded to the quarters of some of the merchant crew and consumed a quantity of whiskey which caused him to become drunk. Backus was on duty. He and Rosborough got into a controversy which developed into a fight. They were separated and Rosborough was put in his bunk by Pendarvis, another member of the Armed Guard crew. Rosborough got up and came on deck, but was again put in his bunk. However, he did not stay there. There is some evidence that he went looking for a knife but did not find one. He then proceeded to the bridge of the Baltic where a 30 calibre Lewis machine gun was mounted on the starboard side. This gun was under the control of the naval crew on the Baltic. Rosborough fired a burst from this gun into the air. Williams, a member of the merchant crew, and Phillips a member of the gun crew, and Backus, proceeded up to the bridge by various routes. Williams attempted to get Rosborough away from the gun. As Backus and Phillips were approaching, Rosborough fired a burst in their direction. Phillips dropped to the deck; Backus was struck by the bullets discharged from the gun and died almost instantly.

The policy of insurance provides:

"Against loss of life * * * directly occasioned by capture, seizure, destruction by men of war, piracy, takings at sea, arrests, *restraints and detainments* and other warlike operations * * *" (Italics mine.)

To bring the claim of the libellant within the terms of the policy, it must be established (a) there was a restraint in warlike operations, and (b) such restraint must have been the proximate cause of the death of Backus Crist v. U. S. War Shipping Administration, D.C. 64 F.Supp. 934, 1946 A.M. C. 170.

Libellant argues with much emphasis that the guns and small arms were not locked as they should have been while the vessel was in port. The evidence of any such regulation is skimpy; Ensign Ferguson testified in a Court Martial proceeding, the record of which was read into evidence here, that the requirements differed from port to port. Whether the guns or ammunition were under lock on the night of June 29th, does not appear to the Court to be important in the determination of this case. Certainly Backus who, as Chief Officer, was in charge of the ship while the master was ashore, had no authority or control over the gun crew or the guns and ammunition. That was a restraint exercised by the U. S. Navy. It is a matter of common knowledge that enemy submarines were abroad at that time for the purpose of destroying merchant vessels on any and all trade routes and it was in consequence of this that the United States Government, acting through its Navy Department, equipped merchant vessels,

even of foreign registry and operated under charter by agencies of our Government itself, for the purpose of their protection. That was unquestionably a warlike operation.

Proximate cause is factual in the last analysis, to be determined from the surrounding circumstances of the case.

The court is satisfied that the proximate cause of the death of Backus was the restraint in warlike operations and the loss of his life was within the war risks set forth in the policy of insurance.

The Advocate for the Government cited and relies upon Standard Oil Co., of New Jersey, v. St. Paul Fire & Marine Ins. Co., D.C., 59 F.Supp. 470, 1945 A.M.C. 109. That case, decided by this court, and the other cases relied upon by the respondent, are not regarded as applicable here.

Therefore, the Court makes the following findings of fact and conclusions of law:

1. At all the times hereinafter mentioned libellant was a resident of the State of New Jersey.

2. At all the times hereinafter mentioned the United States of America was, and still is a sovereign.

3. At all the times hereinafter mentioned the M/V Baltic, of Panamanian registry was operated by the Panama Transport Company under a time charter to the War Shipping Administration, a duly authorized agent of the respondent.

4. That immediately prior to the 30th day of June, 1942, Ernest F. Backus, hereinafter referred to as the decedent, signed regular Shipping Articles and served aboard the M/V Baltic as First Officer and was a member of the crew engaged as such officer at the moment of and immediately preceding the date of his death on June 30, 1942.

5. Pursuant to the provisions of law the respondent had issued a policy upon the life of said Ernest F. Backus payable to the libellant in the sum of $5,000 in the event of the death of said Backus being occasioned in accordance with certain terms and conditions of said policy.

6. That on or about the 30th day of June 1942, the said Backus, while in the performance of his duty, was shot and killed and that the proximate cause of his death was the restraint exercised by the U.S.Navy while said vessel was engaged in warlike operations.

7. Libellant has complied with all the terms and conditions of said policy on her part to be performed.

8. Libellant demanded full payment under said policy which the respondent refused to make.

## Conclusions of Law

1. This suit is brought under the provisions of the Act of March 9, 1920, known as the Suits in Admiralty Act, 46 U. S.C.A. § 741 et seq., and all Acts supplemental thereto and amendatory thereof and the respondent consented to the institution and prosecution of this suit and the court therefore has jurisdiction of the parties and the subject matter.

2. Libellant is entitled to recover the sum of Five Thousand ($5,000) Dollars from the respondent, together with costs to be taxed by the Clerk of the Court.

Let decree be entered accordingly.