## DARANOWICH v. UNITED STATES.

District Court, S. D. New York.
July 1, 1947.

Krisel & Beck, Maurice A. Krisel and Roman Beck, all of New York City, for libellant.

John F. X. McGohey and Howard F. Fanning, both of New York City, for respondent.

BONDY, District Judge.

Libellant as sole beneficiary sues to recover upon a crew life and injury policy issued by the War Shipping Administration upon the life of Vladimir Trushko.

Trushko was a messman aboard the S. S. Africander, a merchant vessel registered under the laws of Panama and operated and controlled by the United States. On September 13, 1942, while she was proceeding in convoy on a voyage from Halifax, Nova Scotia, to Murmansk, Russia, she was torpedoed, and sank. Trushko was taken aboard a lifeboat from which he, together with other survivors, was transferred to a mine sweeper, then to a small coastal rescue vessel and on September 15th to a British destroyer, H.M.S. Milne. At about 10 a. m. on September 22, 1942, while it was dark and the sea very rough, a general alarm was sounded on the Milne and she stood by and searched the sea unsuccessfully for about an half hour and then continued on a course to Scotland. Trushko was seen aboard before but not after the general alarm. A witness testified that he was told that the alarm was sounded because Trushko and one of the British sailors had been washed overboard. Upon the Milne's arrival in Scotland, Trushko was not aboard.

Respondent contends that Trushko's death may have occurred through negligence or suicide or in many other ways not covered by the policy of insurance. In its answer respondent admits that Trushko lost his life on or about September 22, 1942, but alleges that he lost it by reason of a marine peril and not as a result of any of the perils described in the policy.

The direct evidence disclosing Trushko's presence aboard the Milne before the alarm and his absence thereafter, and the admission in respondent's answer of his death on or about the day of the alarm are sufficient in the opinion of the court to permit the inference that he met his death accidentally on that day by being lost overboard. There is generally a presumption against the theory of suicide. Prudential Ins. Co. v. Baciocco, 9 Cir., 29 F.2d 966, certiorari denied 279 U.S. 854, 49 S.Ct. 350, 73 L.Ed. 996; Franklin Life Ins. Co. v. Heitchew, 5 Cir., 146 F.2d 71, certiorari denied 324 U.S. 865, 65 S.Ct. 914, 89 L.Ed. 1421. No facts appear to indicate that Trushko contemplated suicide. Circumstantial evidence is competent to prove accidental death by drowning although no one saw the drowning and the body was not recovered. See Policyholders' Nat. Life Ins. Co. v. Harding, 8 Cir., 147 F.2d 851; Occidental Life Ins. Co. v. Thomas, 9 Cir., 107 F.2d 876; Herold v. Prudential Ins. Co. of America, D.C., 23 F.Supp. 424, affirmed 3 Cir., 96 F.2d 996, certiorari denied 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391.

The policy covered loss of life "directly occasioned by capture, seizure, destruction by men of war, piracy, takings at sea, arrests, restraints and detainments and other warlike operations. * * * Provided, That in case of destruction or abandonment of said vessel from the causes specified * * * said master, officers, and crew shall continue to be insured against the risks herein specified until they have reached a safe vessel or some other place of safety * * *."

War risk policies have been liberally interpreted in favor of seamen and their beneficiaries. Murphy v. United States, D. C., 66 F.Supp. 260; Reinold v. United States of America, D.C., 72 F.Supp. 92, 1947 A.M.C. 267. See Hearings before the Committee on the Merchant Marine and Fisheries, House of Representatives, Seventy-Ninth Congress, First Session, Part 1, pp. 191–196, Part 2, pp. 443–448.

Even if under most liberal interpretation, it might be considered that the Milne was engaged in a warlike operation while transporting the rescued seaman and that Trushko lost his life during such warlike operation, there is no evidence justifying the conclusion that his loss of life by being swept overboard, as claimed by libellant, or otherwise was "directly occasioned" by the warlike operation.

In the provision that in case of destruction of a vessel from the causes specified the officers and crew shall continue to be insured until they have reached a safe vessel or some other place of safety, the words "safe vessel" can not be construed to mean a vessel that is absolutely safe as against any or all risks of war since there were no such vessels during the World War. By the words "safe vessel or some other place of safety", it was intended to describe a ship or place of refuge freeing the unfortunate seaman from the direct danger encountered through the destruction of his ship.

The court believes the rescuing mine sweeper, the coastal vessel and destroyer were seaworthy and "safe vessels" within the meaning of the policy.

The court has been informed that Crist v. United States War Shipping Administration, D.C., 64 F.Supp. 934, chiefly relied on by the libellant, has just been reversed by the Circuit Court of Appeals for the Third Circuit, 163 F.2d 145.

The court very reluctantly concludes that the libel must be dismissed.